417 S.E.2d 919

**In the Matter of J. Ned GRUBB, Judge, Circuit Court of Logan County.**

No. 20978.

Supreme Court of Appeals of West Virginia.

Submitted April 7, 1992.

Decided May 7, 1992.

---

David R. Janes, Fairmont, for Judicial Investigation Com'n.

Robert P. Martin, Meyer, Darragh, Buckler, Bebenek, Eck & Hall, Charleston, for J. Ned Grubb.

McHUGH, Chief Justice:

This judicial disciplinary proceeding was initiated pursuant to Rule II(J)(1) and (2) of the *Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters*, in response to a five-count indictment and a later superseding eight-count indictment returned by a federal grand jury of the United States District Court, Southern District of West Virginia, against J. Ned Grubb, Judge of the Seventh Judicial Circuit.

I

On February 27, 1992, a federal grand jury indicted Judge J. Ned Grubb on the charges of bribery, mail fraud, conspiracy, witness tampering and obstruction of justice.

The indictment alleges that, prior to the Democratic primary election in the spring of 1988, Judge Grubb met with Earl Tomblin in the judicial chambers at the Logan County courthouse. During that meeting, Judge Grubb allegedly proposed that Mr. Tomblin give a $10,000 campaign contribution to Oval Adams, a candidate for the office of Sheriff of Logan County, in return for which Mr. Adams would create a job for Mr. Tomblin after his election. Judge Grubb, Mr. Tomblin and Mr. Adams later agreed to the arrangement.[1] Thereafter, Mr. Tomblin made the $10,000 contri-

---

1. Mr. Adams and Mr. Tomblin allegedly had a telephone conversation during which Mr. Tomblin advised Mr. Adams that the contribution to be paid in exchange for a job would be dis-guised as a loan. In the event Mr. Adams lost the election or failed to create a job for Mr. Tomblin, he was to return the $10,000 to Mr. Tomblin.

bution to Mr. Adams' campaign.[2] Upon his election to the sheriff's office, Mr. Adams created a new position for Mr. Tomblin and added him to the payroll of the Logan County Sheriff's Department.[3]

The indictment further charges that Judge Grubb, upon learning of the grand jury's investigation of this matter, encouraged Mr. Adams to provide false information to federal investigators and prosecutors, and to provide false testimony to the grand jury. Judge Grubb also allegedly recommended methods by which Mr. Adams could mislead the federal investigators, prosecutors and grand jury concerning the $10,000 campaign contribution, and suggested a false story Mr. Adams could use to explain the hiring of Mr. Tomblin.

Judge Grubb is further charged in the indictment with giving false statements to special agents of the Federal Bureau of Investigation regarding the exchange of money between Mr. Tomblin and Mr. Adams. Judge Grubb denied having any knowledge of illegal cash being used by anyone during the 1988 campaign.

Following the indictment, the Administrative Director of the Supreme Court of Appeals filed a complaint with the Judicial Investigation Commission of West Virginia (hereinafter Commission) advising the Commission of the charges against Judge Grubb. In response to the complaint, the Commission immediately initiated an investigation. The Commission also filed a report with this Court advising us of the indictment against Judge Grubb, and petitioning us to take such action as provided in Rule II(J)(1) and (2) of the *Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters.*

On February 28, 1992, the Chief Justice of the Supreme Court of Appeals entered an administrative order prohibiting Judge Grubb from hearing any further civil or criminal matters while under indictment, and providing him the opportunity to petition this Court for a hearing with regard to the administrative order.

A rule to show cause why Judge Grubb should not be suspended, with or without pay, was issued by this Court on March 4, 1992, and Judge Grubb was directed to appear before us for oral argument on April 7, 1992. On March 16, 1992, Judge Grubb filed a motion to continue the oral argument set in this case until after the conclusion of the federal criminal trial on the charges against him. We refused that motion, and advised Judge Grubb that the issue of his salary pending the resolution of the federal indictment against him would be addressed during the oral argument scheduled for April 7, 1992.

At the oral argument held on April 7, 1992, this Court was advised that a superseding indictment had been filed against Judge Grubb charging him, in addition to the five counts stated in the original indictment, with interference with commerce by threats or violence,[4] fraud [5] and racketeering activity.[6] The Commission also made a copy of the superseding indictment part of the record before us.

Following the submission of this case, the United States District Court of the Southern District of West Virginia entered an order on May 7, 1992, reflecting that Judge Grubb was found guilty by a jury of seven of the eight counts in the indictment.

---

**2.** It is also alleged in the indictment that Judge Grubb gave Mr. Adams an illegal campaign contribution in the amount of $3,000.

**3.** Mr. Tomblin was added to the payroll of the Sheriff's Department as an "investigator."

**4.** The superseding indictment alleges that Judge Grubb and his wife attempted to affect commerce by extortion in that they unlawfully obtained $4000 cash from an attorney, Mark Hobbs, from the proceeds of a lawsuit pending before Judge Grubb.

**5.** Judge Grubb allegedly obtained a $10,000 campaign contribution from James V. Burgess, Jr., a candidate for state senate, as payment for inclusion on Judge Grubb's slate of candidates. Judge Grubb allegedly filed false and fraudulent campaign financial statements with the Secretary of State of West Virginia in that he failed to report the $10,000 contribution from Mr. Burgess.

**6.** The racketeering charges stem from the other counts of the indictment.

He was found not guilty of the count alleging that he attempted to affect commerce by extortion in unlawfully obtaining $4,000 from an attorney from the proceeds of a lawsuit pending before him.

The sole issue in the proceeding now before us is whether Judge Grubb should be suspended with or without pay pending the final disposition of the criminal charges against him.[7] Judge Grubb argues that a suspension without pay would deprive him of his property without due process of the law. The Commission asserts that this Court has authority to suspend Judge Grubb without pay, and that he may be able to recover the salary withheld during his suspension if the charges against him are not proven and cause for his removal is not established.

## II

The judicial power of this Court is grounded in the *West Virginia Constitution.* Article VIII, section 3 of our *Constitution* bestows upon this Court general supervisory control over all intermediate appellate courts, circuit courts and magistrate courts. We have an inherent responsibility under our general supervisory powers to preserve the integrity of the judiciary and to maintain the public confidence in our court system.

■ Article VIII, section 8 of the *West Virginia Constitution* mandates that we promulgate rules prescribing a judicial code of ethics, and standards of conduct and performance. Furthermore, that section empowers this Court to censure or temporarily suspend any judge, justice, or magistrate for any violation of the Judicial Code of Ethics.[8] *West Virginia Judicial Inquiry Commission v. Dostert,* 165 W.Va. 233, 271 S.E.2d 427 (1980). In accordance with the directives of article VIII, section 8 of the *West Virginia Constitution* and our inherent obligation to sustain the probity of the judiciary, this Court promulgated the *Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters.*

■ When the integrity of the judiciary is placed into question by the action or conduct of any judge, this Court is authorized to impose an interim suspension pending the disposition of the charges against the judge or until the underlying judicial disciplinary proceeding is completed. This Court's authority to suspend a judge, with or without pay, following the criminal indictment or conviction of that judge or the completion of judicial disciplinary proceedings initiated against that judge is stated in Rule II(J)(2) of the *Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters.* Rule II(J)(2) provides, in relevant part:

> [T]he Supreme Court, upon determining that cause exists, shall provide notice of the charges to the Judge with the right to hearing in not less than twenty (20) days before the Supreme Court. After such hearing, the Supreme Court may suspend the Judge with or without pay until the underlying disciplinary proceeding before the Judicial Investigation Commission has been completed; provided, however, that the Chief Justice of the Supreme Court may order that a Judge not hear any further civil or criminal matters while under indictment for a felony or misdemeanor without application to the Judicial Investigation Commission, in which event the Judge may petition the Supreme Court for a hearing.

■ In the present case, as stated previously, Judge Grubb has been indicted for and convicted of very serious crimes. First, the federal grand jury returned a

---

7. We note that *W.Va.Code,* 6–5–5 [1931] provides:

> No person convicted of treason, felony, or bribery in any election, before any court in or out of this state, shall, while such conviction remains unreversed, be elected or appointed to any office under the laws of this state; and, if any person, while holding such office, be so convicted, the office shall be thereby vacated.

That issue, however, is not before us.

8. Article IV, section 9 of the *West Virginia Constitution* provides that the house of delegates shall have the sole power of impeachment of officials, and that the senate shall have the sole power to try impeachment of officials.

five-count indictment against Judge Grubb. Then the grand jury later returned a superseding indictment charging Judge Grubb with bribery, mail fraud, conspiracy, witness tampering, obstruction of justice, interference with commerce, fraud and racketeering activity. Although this Court, by administrative order, ordered Judge Grubb not to hear any further civil or criminal matters while under indictment, we have not determined whether, as an interim measure, he should be suspended with or without pay pending the final resolution of the criminal charges against him and the completion of the judicial disciplinary proceeding by the Judicial Investigation Commission.

We recognize that some courts have held that the public confidence and the integrity of the judiciary will best be served by suspending the judge with pay pending the outcome of judicial disciplinary proceedings against the particular judge. *Gruenburg v. Kavanagh*, 413 F.Supp. 1132 (E.D.Mich. 1976); *In re Inquiry Concerning a Judge*, 333 So.2d 22 (Fla.1976); [9] *In re Del Rio*, 400 Mich. 665, 256 N.W.2d 727 (1977), *appeal dismissed*, 434 U.S. 1029, 98 S.Ct. 759, 54 L.Ed.2d 777 (1978); [10] *In re Kirby*, 350 N.W.2d 344 (Minn.1984); [11] *State ex rel. Green v. Tilton*, 1 Ohio St.3d 54, 437 N.E.2d 1174 (1982).[12] However, we have also found authority for suspending a judge, who has been indicted or charged with a criminal offense, without pay, pend-

ing final disposition of the charges against the judge. *In re Coruzzi*, 95 N.J. 557, 472 A.2d 546, *appeal dismissed*, 469 U.S. 802, 105 S.Ct. 56, 83 L.Ed.2d 8 (1984); *In re Brennan*, 65 N.Y.2d 564, 493 N.Y.S.2d 549, 483 N.E.2d 484 (1985); [13] *In re Ferguson*, 304 S.C. 216, 403 S.E.2d 628 (1991); *see* 46 Am.Jur.2d *Judges* § 62 (1969); 48A C.J.S. *Judges* § 76 (1981).

The statutory amendment [14] enabling the New Jersey Supreme Court to indefinitely suspend a judge without pay pending removal proceedings was challenged in *In re Coruzzi, supra*. Judge Coruzzi was arrested immediately after accepting a bribe from an attorney who was fitted with electronic surveillance equipment so that law enforcement personnel could monitor the conversation. Judge Coruzzi was immediately relieved of all of his duties, and the Supreme Court filed a complaint for his removal and suspended him without pay.[15] Following his conviction, Judge Coruzzi challenged the amendment allowing his indefinite suspension without pay pending the outcome of the removal proceedings asserting, among other grounds, that it impairs an obligation of contract. The court stated that the regulatory purpose of the amendment was to enable "the Supreme Court to preserve public confidence in the judiciary by not allocating public funds to pay salary to members of the judiciary who have conducted themselves in a manner that warrants suspension." 472

---

**9.** Article V, section 12(f) of the *Florida Constitution* allows suspension, with or without pay, pending final determination of the inquiry.

**10.** *Mich.Const.* art. VI, § 30 allows the supreme court to suspend a judge with or without pay for conviction of a felony.

**11.** We note that Rule 7(a) of Minnesota's Rules of Board on Judicial Standards provides that the supreme court *shall* immediately suspend *with* pay and without a hearing any judge charged with a felony. Unlike our Rule II(J)(2), those rules do not authorize the Minnesota Supreme Court to suspend a judge, *without* pay, upon indictment.

**12.** Rule III(1)(b) of the Rules for the Government of the Judiciary of Ohio provides that a judge is disqualified from acting as a judge while there is pending an indictment against him charging him with a felony.

**13.** Article VI, section 22(g) of the *New York Constitution* allows a suspended judge to receive his judicial salary during the period of suspension unless otherwise directed by the court.

**14.** N.J.Stat.Ann. § 2A:1B–5 (West 1982) provides: "The Supreme Court may suspend a judge from office, with or without pay, pending the determination of the proceeding." The statute previously limited that power to 90 days. The legislature, aware of Judge Coruzzi's arrest and the initiation of removal proceedings, amended the statute to allow for the indefinite withholding of pay pending the removal proceedings. 472 A.2d at 555. The amendment by the legislature was done so before the expiration of the 90–day suspension in that case.

**15.** The New Jersey Supreme Court withheld further proceedings pending the outcome of the criminal action.

A.2d at 557. The Court found that the "amendment is instrumental to preserve public confidence regardless of whether the judge is ultimately found fit for office." [16] 472 A.2d at 557–58. The court further recognized that public officers do not have "contractual" rights to specific terms of compensation and employment within the meaning of the Contract Clause. *Id.* The court concluded that the law does not unconstitutionally impair any contractual right of the judge.

In *Brennan, supra,* the judge was charged in a federal indictment with bribe receiving. The Court of Appeals of New York reasoned that "[t]he issue before us is not of his innocence (which is presumed) or guilt, but whether in the face of the cloud created by the number and seriousness of the charges against him his pay should be continued during the period of his suspension." 483 N.E.2d at 484. The court concluded that the judge's salary should be suspended.

The South Carolina Supreme Court recently decided a case which is also similar to the case before us. In *In re Ferguson, supra,* the Court held that it had the inherent authority to protect itself and the public by suspending a judge, who was indicted for serious crimes,[17] without pay, under the constitutional article charging the supreme court with administering the courts in the state.[18] The Court further held that withholding the judge's pay did not constitute a diminution of his salary in contravention of article V, section 16 of the *South Carolina Constitution.* 403 S.E.2d at 630. The Court recognized that although article V, section 16 limits the ability of the General Assembly to diminish the salary of members of the judiciary during their terms of office with the intent to keep the judiciary independent from the General Assembly, it was not intended to give any judge "judicial independence" from the supreme court of the state.[19] *Id.*

■ Upon a review of the above, we conclude that under the authority of article VIII, sections 3 and 8 of the *West Virginia Constitution* and Rule II(J)(2) of the *Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters,* the Supreme Court of Appeals may suspend a judge, who has been indicted for or convicted of serious crimes, without pay, pending the final disposition of the criminal charges against the particular judge or until the underlying disciplinary proceeding before the Judicial Investigation Commission has been completed.[20]

In the case before us, the public Judge Grubb has been elected to serve has knowledge of the serious criminal charges filed against him and now is aware that he has been convicted of those charges.[21] His effectiveness as a judge and the integrity of the judiciary have been called into question. Given our obligation to preserve the integrity of the judiciary and the public confidence, we have determined that Judge Grubb should be temporarily suspended without pay pending the final disposition of

**16.** The New Jersey Supreme Court noted that if the removal proceedings were not sustained, the judge would presumably be entitled to back pay. 472 A.2d at 558 n. 15.

**17.** In *In re Ferguson,* the judge was charged under federal indictment with one count of conspiracy to commit extortion, two counts of extortion under color of official right, one count of conspiracy to possess cocaine and five counts of intentional possession of cocaine.

**18.** We note that the South Carolina Supreme Court does not have any specific constitutional authority to suspend judges. As we have already pointed out, *W.Va.Const.* art. VIII, § 8 empowers this Court to temporarily suspend judges.

**19.** The South Carolina Supreme Court also held that the salary pertaining to an office is an incident to the office itself and not to the person discharging the duties of the office. 403 S.E.2d at 630–31. The court cited the common law rule that the officer's right to compensation arises out of his performance of his duties. *Id.*

**20.** We note that Rule III(C)(13)(a) of the *Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters* only allows the Judicial Hearing Board to recommend suspending a judge temporarily for up to one year. That issue, however, has not been presented in this case.

**21.** Our decision today is based solely upon the indictment and not Judge Grubb's subsequent conviction.

the criminal charges against him and the completion of the underlying judicial disciplinary proceeding before the Judicial Investigation Commission.

In the event that Judge Grubb is successful in having his conviction reversed following an appeal, he may maintain a cause of action for back pay.[22] *See Pfingst v. State*, 85 Misc.2d 689, 381 N.Y.S.2d 201 (Ct.Cl.1976), *aff'd*, 57 A.D.2d 163, 393 N.Y.S.2d 803 (1977). However, we find that the overriding public interest in preserving the integrity of the judiciary demands that we subordinate the personal interests of Judge Grubb and suspend him without pay pending the outcome of an appeal of his conviction and the judicial disciplinary proceeding initiated against him.

Therefore, we conclude that Judge Grubb should be temporarily suspended without pay pending the final disposition of the criminal charges filed against him, and the completion of the judicial disciplinary proceeding initiated by the Judicial Investigation Commission.

Suspended without pay.

---

**22.** We note that, independent of a conviction, there are potential ethics violations. Thus, even if Judge Grubb is ultimately acquitted after an appeal, judicial disciplinary proceedings will not be precluded. This Court has authority to suspend a judge without pay under Rule II(J)(2) "until the underlying disciplinary proceeding before the Judicial Investigation Commission has been completed[.]"