438 S.E.2d 613

## The COMMITTEE ON LEGAL ETHICS OF the WEST VIRGINIA STATE BAR, Complainant,

v.

## Gordon T. IKNER, a Member of the West Virginia State Bar, Respondent.

### No. 21974.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 30, 1993.

Decided Dec. 14, 1993.

---

Sherri D. Goodman, Chief Disciplinary Counsel West Virginia State Bar, Charleston, for complainant.

James B. McIntyre, McIntyre & Collias, Charleston, for respondent.

## DISCIPLINARY PROCEEDING

MCHUGH, Justice:

The Committee on Legal Ethics of the West Virginia State Bar (hereinafter "Committee") petitions this Court for an order suspending indefinitely, without a hearing, the law license of respondent, Gordon T. Ikner,[1] pending his apprehension and trial on criminal charges of embezzlement and forgery. Upon consideration of the Committee's petition and the response thereto, we grant the suspension.

### I

The record before us consists of the petition filed by the Committee and a response filed by Mr. Ikner's attorney. The facts, which we have discussed below, are from the petition of the Committee and are, therefore, representations by the Committee.

Mr. Ikner is currently an active member of the West Virginia State Bar (hereinafter "State Bar"). Mr. Ikner practiced law in Lewisburg, West Virginia, until October 7, 1993.

A statement of charges was filed recently against Mr. Ikner alleging that he had misappropriated funds from his client trust account in 1990 and 1991. A hearing on those charges was held before the hearing panel on June 15, 1993. Mr. Ikner appeared at the hearing and testified that he had repaid all amounts misappropriated. The hearing panel then continued the hearing and directed Mr. Ikner to present documentation to establish how much he had misappropriated and whether he had restored all the amounts to the client trust account.

After the hearing, the Chief Disciplinary Counsel received additional information which indicated that the respondent had recently experienced negative balances in his client trust account. Based on this information, the Chief Disciplinary Counsel requested that Mr. Ikner provide bank records through June of 1993 and all checks and deposit slips for certain months designated by the Chief Disciplinary Counsel.

Mr. Ikner appeared at a meeting held in Charleston, West Virginia, on September 24, 1993, and presented the documents to the Chief Disciplinary Counsel. Mr. Ikner, however, would not allow counsel to take the documents, which were the originals, from his attorney's office.

Thereafter, the Chief Disciplinary Counsel obtained copies of the requested documents. However, while counsel was in the process of reviewing the documents, she received information on October 1, 1993, that Mr. Ikner may have negotiated an insurance settlement check without his client's knowledge.

On October 6, 1993, after investigating this allegation, Chief Disciplinary Counsel obtained a copy of the negotiated check. On that same day, counsel discussed the matter with Mr. Ikner, and he agreed to meet with his attorney the following day. The Chief Disciplinary Counsel represents that she intended to seek Mr. Ikner's consent to disbarment that day.

Mr. Ikner, however, did not meet with his attorney that day. Instead, in the early morning hours of October 7, 1993, Mr. Ikner allegedly left his home in Lewisburg, West Virginia, and disappeared. On October 8, 1993, a warrant for his arrest on the charges of forgery and embezzlement was issued.

On October 11, 1993, the Circuit Court of Greenbrier County appointed attorney David Ziegler of Hinton, West Virginia, to take inventory of Mr. Ikner's files and protect this clients' interests.[2]

The Committee now seeks an order suspending Mr. Ikner's law license because he has voluntarily fled this jurisdiction while disciplinary proceedings were pending and new misconduct on his part was discovered. The Committee contends that his license

---

1. Mr. Ikner's whereabouts are unknown at the present time.

2. This appointment was made pursuant to article VI, § 29 of the State Bar's by-laws.

should be suspended without a hearing on those disciplinary proceedings pending his apprehension and trial on the charges of forgery and embezzlement.

Mr. Ikner's attorney, in the response to the petition, contends that the suspension of Mr. Ikner's license to practice law is not necessary. Mr. Ikner's attorney represents that Mr. Ikner would not harm the public since his clients in West Virginia are informed of the charges against him and since it is unlikely that Mr. Ikner would attempt to practice law elsewhere. However, in the event that Mr. Ikner would attempt to practice law elsewhere, Mr. Ikner's attorney contends that the Committee could inform an inquiring party of the status of Mr. Ikner's license. Mr. Ikner's attorney also argues that a suspension in this case would violate Mr. Ikner's due process rights.

Upon receiving the Committee's complaint, this Court entered a rule directing Mr. Ikner to appear before this Court on November 30, 1993 to show cause why an order should not be entered indefinitely suspending his license to practice law. Mr. Ikner failed to appear before this Court on November 30, 1993.

## II

This is a case of first impression because there is no specific By–Law in the *By–Laws of the West Virginia State Bar* which addresses whether or not a lawyer's license can be suspended when a lawyer disappears during a disciplinary proceeding and abandons his legal practice. Furthermore, this Court has not ever addressed this issue.

We believe that any ethical charge pending against a lawyer which indicates that the integrity of the legal system has been placed into question is serious, especially in the case before us since Mr. Ikner was aware of an ongoing disciplinary proceeding when he disappeared. The Chief Disciplinary Counsel asserts that since Mr. Ikner's whereabouts are unknown his license should be suspended to prevent him from representing that he is a West Virginia attorney to others who would be unaware of the serious charges pending against him. We have noted that "[i]ntegrity and honor are critical components of a lawyer's character as are a sense of duty and

fairness. Because the legal system embraces the whole of society, the public has a vital expectation that it will be properly administered." *In re Brown,* 166 W.Va. 226, 232–33, 273 S.E.2d 567, 570 (1980). Thus, we agree with the Chief Disciplinary Counsel that this issue should be addressed.

█ This Court has stated that "[t]he primary purpose of the ethics committee is not punishment but rather the protection of the public and the reassurance of the public as to the reliability and integrity of attorneys[.]" *Committee on Legal Ethics of the West Virginia State Bar v. Mullins,* 159 W.Va. 647, 651, 226 S.E.2d 427, 429 (1976), *overruled on another point, Committee on Legal Ethics v. Cometti,* 189 W.Va. 262, 430 S.E.2d 320 (1993). In order to protect the public and uphold the public's confidence in the reliability and integrity of attorneys this Court has "the inherent power to supervise, regulate and control the practice of law in this State[.]" *In re Daniel,* 153 W.Va. 839, 842, 173 S.E.2d 153, 155 (1970).

█ In the past we have set forth principles to regulate the practice of law when there has not been a specific rule or law governing the issue. For instance, in *In re Brown,* 166 W.Va. at 231, 273 S.E.2d at 569, we recognized that *In re Daugherty,* 103 W.Va. 7, 136 S.E. 402 (1927) and *In re Eary,* 134 W.Va. 204, 58 S.E.2d 647 (1950) were "significant in their recognition that the courts do possess inherent power to formulate standards for reinstatement as a part of their larger power to regulate the practice of law" when a rule did not exist which specifically addressed the issue. Therefore, even though there is no specific rule or case which has addressed this issue, we will address the issue under our inherent power to regulate the practice of law.

█ We note that this Court does have the authority to suspend a judge before a disciplinary proceeding has been completed under Rule II(J)(2) of the *Rules of Judicial Disciplinary Procedure* which states, in pertinent part, that when

the integrity of the legal system has been placed into question by a Judge by virtue

of his having been indicted or otherwise charged with a serious offense, having engaged in some breach of the Code of Judicial Conduct, or having become unable to perform his legal obligations ... the Supreme Court may suspend the Judge with or without pay until the underlying disciplinary proceeding ... has been completed[.]

We applied this rule in *In re Grubb,* 187 W.Va. 228, 417 S.E.2d 919 (1992) and suspended a judge who was indicted for a serious crime.

▆ Additionally, we explained in *In re Grubb* that "[w]e have an inherent responsibility under our general supervisory powers to preserve the integrity of the judiciary and to maintain the public confidence in our court system." *Id.* at 231, 417 S.E.2d at 922. Although the *By–Laws of the West Virginia State Bar* currently do not have a similar rule, this Court has the same obligation to maintain public confidence in our court system.[3] Furthermore, " '[t]his Court is the final arbiter of legal ethic problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law.' Syllabus Point 3, *Committee on Legal Ethics v. Blair,* [174] W.Va. [494], 327 S.E.2d 671 (1984)." Syl. pt. 1, *Committee on Legal Ethics v. Charonis,* 184 W.Va. 268, 400 S.E.2d 276 (1990).

▆ Thus, we conclude that under the authority of the Supreme Court of Appeal's inherent power to supervise, regulate and control the practice of law in this State, the Supreme Court of Appeals may suspend the license of a lawyer or may order such other actions as it deems appropriate, after providing the lawyer with notice and an opportunity to be heard, when there is evidence that a lawyer (1) has committed a violation of the Rules of Professional Conduct or is under a disability and (2) poses a substantial threat of irreparable harm to the public until the underlying disciplinary proceeding has been resolved.

▆ In the case before us, we find that Mr. Ikner's disappearance during a disciplinary proceeding is reprehensible. However, what is more troubling is that Mr. Ikner by disappearing has abandoned his legal practice, thus jeopardizing the legal interests of his clients in violation of *West Virginia Rules of Professional Conduct* 1.1 (regarding a lawyer's competence), 1.3 (regarding a lawyer's diligence), and 1.4 (regarding a lawyer's communication with his clients). Critical traits of a lawyer's character are honor and integrity. Certainly, those qualities would be lacking in a lawyer who abandons his clients. The public's confidence in our legal system would be undermined if we allowed a lawyer, who has voluntarily disappeared during a disciplinary proceeding and abandoned his legal practice, to continue to be a licensed lawyer while his whereabouts remain unknown. Therefore, because Mr. Ikner abandoned his clients' legal interests thereby vio-

---

**3.** We note that this Court has approved for comment Rules of Lawyer Disciplinary Procedure which, if adopted, will supersede article VI of the By–Laws of the West Virginia State Bar. The following proposed rule directly addresses the issue in the case before us:

**Rule 3.27.** *Extraordinary Proceedings.* (a) Upon receipt of sufficient evidence demonstrating that a lawyer (1) has committed a violation of the Rules of Professional Conduct or is under a disability and (2) poses a substantial threat of irreparable harm to the public, the Office of Disciplinary Counsel shall conduct an immediate investigation.

(b) Upon completion of such investigation, the Office of Disciplinary Counsel shall promptly file a report with the Supreme Court of Appeals indicating whether, in the opinion of Disciplinary Counsel, the lawyer's commission of a violation of the Rules of Professional Conduct or disability poses a substantial threat of irreparable harm to the public. The Office of Disciplinary Counsel shall attempt to provide reasonable notice to the lawyer prior to the filing of this report.

(c) Upon receipt of this report, the Supreme Court, upon determining the existence of good cause, shall provide notice of the charges to the lawyer with the right to a hearing in not less than thirty days before the Court. The Supreme Court may appoint a trustee to protect the interest of the lawyer's clients during the pendency of these proceedings. After such hearing, the Supreme Court may temporarily suspend the lawyer or may order such other action as it deems appropriate until underlying disciplinary proceedings before the Lawyer Disciplinary Board have been completed.
Rule 3.27 of the proposed Rules of Lawyer Disciplinary Procedure which were approved for comment on October 14, 1993, by this Court.

lating certain Rules of Professional Conduct, he poses a substantial threat of irreparable harm. We therefore find it necessary to suspend Mr. Ikner's license until he makes himself available so that the appropriate disciplinary proceedings may be resolved.

Mr. Ikner's attorney correctly points out that Mr. Ikner does possess certain due process rights. We have not ignored those rights. Mr. Ikner was directed to appear before this Court on November 30, 1993, in order to show why his license should not be suspended. Mr. Ikner failed to appear. Furthermore, in the event that Mr. Ikner returns to complete the disciplinary proceedings, he may apply for reinstatement pursuant to the *West Virginia State Bar By–Laws*, art. VI, §§ 31 and 32.

## III

Accordingly, based upon the representations of the Committee and upon notice and opportunity to be heard, we grant the request of the Committee and order that the law license of the respondent, Gordon T. Ikner, be suspended pending the resolution of the disciplinary action which is currently before the Committee.

License Suspended.