456 S.E.2d 202

### In the MATTER of Ira W. ATKINSON, Jr., Magistrate for Wood County.

### No. 22636.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 1995.

Decided March 3, 1995.

---

Charles R. Garten, Charleston, Judicial Disciplinary Counsel.

J. Michael Benninger, Clark B. Frame, Wilson, Frame & Metheney, Morgantown, for Ira W. Atkinson, Jr.

PER CURIAM:

This matter is before this Court as an extraordinary proceeding under Rule 2.14 of the *West Virginia Rules of Judicial Disciplinary Procedure.* The proceeding was instituted by the Judicial Disciplinary Counsel and concerns the West Virginia indictment of the respondent, Ira W. Atkinson, Jr., for various felony and misdemeanor offenses.

The sole issue before us is whether the suspension of the respondent from his office as Magistrate for Wood County, West Virginia, pending the disposition of the charges and concomitant disciplinary proceedings, should be without pay. For the reasons stated below, this Court holds that the suspension is to be without pay.

I

On November 10, 1994, an eighteen-count indictment, No. 94–F–166–W, was returned against the respondent in the Circuit Court of Wood County. The indictment charges offenses under article 5A, "Bribery and Corrupt Practices," of chapter 61 of the *West Virginia Code,* and, in particular, charges felony violations under *W.Va.Code,* 61–5A–3 [1970], concerning bribery in official matters, and misdemeanor offenses under *W.Va.Code,* 61–5A–4 [1970], and *W.Va.Code,* 61–5A–6 [1970], concerning unlawful rewarding for past behavior and gifts or gratuities to public servants. The indictment also charges a felony violation of *W.Va.Code,* 11–9–10 [1984], concerning state tax evasion. According to the respondent's brief, trial upon the indictment is scheduled for April, 1995.

Specifically, the eighteen-count indictment charges violations in four circumstances. Counts one through six allege the construction of an in-ground swimming pool at the respondent's home. Counts seven through eleven allege that roofing work was done upon the respondent's home. Counts twelve and thirteen allege the acceptance by the respondent of $500 in cash. Counts fourteen through eighteen allege the construction of a fish pond at the respondent's home. Each of the four circumstances suggests violations of the respondent's "legal duty as a public servant" and each draws into question the respondent's actions "as a public servant in a judicial proceeding."

On November 15, 1994, an unrelated indictment, No. 6:94–00159, was returned against the respondent in the United States District Court for the Southern District of West Virginia. That indictment charged the respondent with obstructing the federal investigation of a third party. 18 U.S.C.

§ 1503. That indictment, however, was dismissed in February, 1995, and will not be considered herein.

Citing the Wood County indictment, the Administrative Director of the Courts filed a complaint with the Judicial Disciplinary Counsel, pursuant to Rule 2.14 of the *Rules of Judicial Disciplinary Procedure*, and with the Judicial Investigation Commission. Upon an investigation, the Judicial Disciplinary Counsel filed a report with this Court stating that "the integrity of the legal system has been placed into question" by virtue of the charges against the respondent.

By administrative order entered on November 16, 1994, the Acting Chief Justice of this Court suspended the respondent from hearing "any further civil or criminal matters while under indictment...." *See* Rule 2.14(d). Subsequently, this Court issued a rule to show cause directing the respondent to appear before this Court.

## II

■ Pursuant to the *Constitution of West Virginia*, this Court has "general supervisory control" over the circuit courts. *W.Va. Const.* art. VIII, § 3. The *Constitution of West Virginia* further provides this Court with the inherent power to "promulgate and amend rules prescribing a judicial code of ethics, and a code of regulations and standards of conduct and performances for justices, judges and magistrates...." *W.Va. Const.* art. VIII, § 8. Under the latter provision, temporary suspensions by this Court are authorized.

Although those constitutional provisions are silent upon the issue of pay during a temporary suspension, Rule 2.14(c) of the *Rules of Judicial Disciplinary Procedure* states that "the Supreme Court may suspend the judge with or without pay until the underlying disciplinary proceeding before the Judicial Hearing Board has been completed." That language of Rule 2.14(c) is comparable to language found in the former *West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters.*

■ In *In the Matter of Grubb*, 187 W.Va. 228, 417 S.E.2d 919 (1992), we held in the syllabus:

Under the authority of article VIII, sections 3 and 8 of the *West Virginia Constitution* and Rule II(J)(2) of the *Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters,* the Supreme Court of Appeals of West Virginia may suspend a judge, who has been indicted for or convicted of serious crimes, without pay, pending the final disposition of the criminal charges against the particular judge or until the underlying disciplinary proceeding before the Judicial Investigation Commission has been completed.

The *Grubb* case involved a circuit judge indicted in federal court for a number of offenses including bribery, conspiracy and obstruction of justice. The sole issue before this Court was whether the circuit judge's suspension, pending the disposition of the charges and disciplinary proceedings, should be without pay. As discussed in *Grubb*, although several case decisions from foreign jurisdictions indicated that such a suspension from judicial duties should be with pay, other case decisions indicated that such a suspension should be without pay. Recognizing this Court's responsibility to preserve the integrity of the judiciary and to maintain public confidence in our court system, we held in *Grubb*, as the above syllabus suggests, that the suspension, pending the disposition of the charges and disciplinary proceedings, should be without pay.

Importantly, although the circuit judge in *Grubb* was convicted of some of the federal charges while the matter concerning suspension with or without pay was under submission before this Court, our holding in *Grubb* was "based solely upon the indictment and not [the circuit judge's] subsequent conviction." 187 W.Va. at 233 n. 21, 417 S.E.2d at 924 n. 21.

In the matter before us, the respondent does not question the validity of his suspension. Indeed, we noted in *Committee on Legal Ethics v. Ikner,* 190 W.Va. 433, 438 S.E.2d 613 (1993), that, where a serious crime is pending, this Court has "the authori-

ty to suspend a judge before a disciplinary proceeding has been completed." 190 W.Va. at 436, 438 S.E.2d at 616. Rather, the respondent contends that his suspension should be with pay because, *inter alia,* he is presumed innocent of the Wood County charges until convicted and, in addition, a suspension without pay would result in an unjust financial burden upon the respondent.

Similar assertions, however, were rejected in the *Grubb* case. As the opinion in *Grubb* concludes:

> In the event that [the circuit judge] is successful in having his conviction reversed following an appeal, he may maintain a cause of action for back pay. *See Pfingst v. State,* 85 Misc.2d 689, 381 N.Y.S.2d 201 (Ct.Cl.1976), *aff'd,* 57 A.D.2d 163, 393 N.Y.S.2d 803 (1977). However, we find that the overriding public interest in preserving the integrity of the judiciary demands that we subordinate the personal interests of [the circuit judge] and suspend him without pay pending the outcome of an appeal of his conviction and the judicial disciplinary proceeding initiated against him.

187 W.Va. at 234, 417 S.E.2d at 925.

The principles enunciated in the *Grubb* opinion are dispositive of this matter. Furthermore, the charges set forth in the Wood County indictment involve the same compelling qualities which, in *Grubb,* resulted in a suspension without pay. The eighteen-count Wood County indictment, charging several felony offenses, plentifully establishes that serious charges are pending, and, although the respondent contends that he has meritorious defenses to the indictment, his interests, under the circumstances of this case, must be subordinate to this Court's responsibility to preserve the integrity of the judiciary and to maintain public confidence in our court system. Indeed, each of the four circumstances resulting in the charges suggests violations of the respondent's legal duty as a public servant, and each draws into question the respondent's actions as a public servant in a judicial proceeding.

Accordingly, upon all of the above, the respondent, Ira W. Atkinson, Jr., is hereby suspended without pay, pending the final disposition of the Wood County charges against him or until the underlying disciplinary proceeding has been completed.

Suspension Without Pay.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.

NEELY, C.J., and CLECKLEY, J., dissent and reserve the right to file a dissenting opinion.

NEELY, Chief Justice, dissenting:

Serving in elected public office these days is a high risk undertaking. Indeed, the ability of President Bill Clinton to govern has been substantially undermined because of allegations concerning land deals in Arkansas and sexual overtures to women. In general, the old rule that where there's smoke, there's fire has a certain empirical validity, but increasingly the criminal process is being used for vengeance or as a substitute for the elective process and the number of fireless smokings is going up accordingly.

I have no idea whether Magistrate Atkinson is guilty of the offenses as alleged; however, I do know that the likelihood of totally groundless, frivolous charges being leveled against him exclusively because he is an elected official clothed with substantial power at the local level is a great deal higher than it is with ordinary citizens.

Magistrate Atkinson is innocent until proven guilty. When carpenters, garage mechanics, short order cooks, doctors, or even lawyers are indicted, they are not required to stop doing their daily work pending the glacial pace of the judicial process. There is some risk that if we suspend Magistrate Atkinson as we must, and he is convicted, that the State will then be out whatever money we may have paid him for a year. However, the risk of loss is much greater on Magistrate Atkinson's side: if Magistrate Atkinson is innocent and we deprive him of his livelihood for between six months and a year, he may be destitute![1] But the only reason

---

1. It is appropriate to ask what abject poverty

does to the plea bargaining process. Are we

**362**

that Magistrate Atkinson can't work pending his trial is that higher standards of propriety are demanded of the judiciary than are demanded of carpenters, short order cooks, etc. That's a perennial judicial problem, but whatever loss might attend our suspension of judicial employees *with* pay rather than *without* pay ought to be a routine cost of doing business. I do not believe that this Court should be party to possible schemes to destroy elected officials until there is a *jury* conviction.

The provision for allowing a magistrate to be suspended without pay was inserted into the *Code of Judicial Conduct* in 1980 when I was first Chief Justice. The purpose of my proposal of that amendment was to allow this Court greater leverage with regard to magistrates who refused to follow the direction of higher courts. Indeed, when a magistrate fails to follow the direction of either this Court or his or her supervising circuit judge, I would NEVER be reluctant to suspend without pay. Indeed, the availability of that remedy in an administrative context allows us the luxury of never needing to use the remedy.

Perhaps when a magistrate or circuit judge is caught so much *in flagrante delicto* that his or her guilt is immediately beyond doubt[2] that suspension without pay is warranted. However, short of such circumstances, it does not enhance the independence or integrity of the judiciary to allow the judiciary's enemies and detractors one more weapon that invites abuse.

I am authorized to say that Justice Cleckley joins this dissent.

placing extraordinary pressure on Magistrate Atkinson to plead to something?

**2.** As, for example, a magistrate caught with a ski mask and a double barrel shotgun standing with two garbage bags full of money in the middle of the lobby of WesBanco Fairmont.