489 S.E.2d 762

**Ira W. ATKINSON, Jr., Petitioner Below, Appellant,**

v.

**The COUNTY COMMISSION OF WOOD COUNTY, a Political Corporation; Jean Grapes, President of the County Commission; Steven Grimm, Commissioner; and Holmes R. Shaver, Commissioner, Respondents Below, Appellees.**

No. 23880.

Supreme Court of Appeals of West Virginia.

Submitted April 22, 1997.

Decided July 3, 1997.

381

Joseph M. Brown, Parkersburg, for Appellant.

Virginia Conley, Prosecuting Attorney for Wood County, Parkersburg, Richard A. Hayhurst, Parkersburg, for Appellees.

WORKMAN, Chief Justice:

Former magistrate Ira Atkinson appeals the Circuit Court of Wood County's denial of his petition for a writ of mandamus through which he sought a directive requiring Appellee, the Wood County Commission ("Commission"), to reimburse the attorneys' fees he incurred in defending against criminal charges brought against him while in office. We agree with the circuit court that Mr. Atkinson was not a county employee while serving as magistrate and that the Governmental Tort Claims and Insurance Reform Act ("Tort Claims Act"), West Virginia Code §§ 29–12A–1 to –18 (1992), does not apply since the defense costs were incurred in connection with criminal charges and accordingly, affirm the lower court's decision.

Ira Atkinson was elected to a four-year term as a magistrate of Wood County and served in that position from 1993 to 1996. During his tenure as a magistrate, an eighteen-count indictment charging nine felonies and nine misdemeanors was returned against him by a Wood County grand jury. The charges stemmed from allegations that Mr. Atkinson had withheld the prosecution of certain worthless checks in exchange for certain improvements that were performed at his residence.[1] As an intake magistrate, Mr. Atkinson was responsible for accepting the "bad checks" and referring all incoming matters to a separate hearing magistrate who was then required to confer with the prosecuting attorney before proceeding with criminal charges. Appellant maintains that he had no control over the lapse of time between the initiation of the proceedings and the conclusion of the prosecution and further, that the bad check prosecutions were not influenced by the improvements to his residence.[2] This Court suspended Magistrate Atkinson without pay "pending the final disposition of the Wood County charges against him or until the underlying disciplinary proceeding has been completed."[3] *In re Atkinson*, 193 W.Va. 358, 361, 456 S.E.2d 202, 205 (1995).

In addition to the charges brought against him by the State, Mr. Atkinson was the subject of a federal indictment containing obstruction of justice allegations.[4] While the federal charges were dismissed, Mr. Atkinson was tried on the state charges in December 1995. The trial resulted in a not guilty verdict.

On March 14, 1996, Mr. Atkinson filed a petition with the Commission seeking reimbursement for legal costs incurred in connection with both the state and federal criminal charges brought against him in the amount of $79,663.85. Upon advice of the Wood County Prosecuting Attorney, the Commission denied the payment of Mr. Atkinson's attorneys' fees through entry of an order,[5] without any hearing on the matter. Mr. Atkinson then filed a petition for a writ of mandamus with the Circuit Court of Wood County seeking a directive regarding the Commission's duty to pay his attorneys' fees. Without holding a hearing on the issue, the

---

1. The improvements included the construction of a fish pond and a swimming pool, as well as repairs to the roof of his house. He was also charged with allegedly accepting $500 in cash. *See In re Atkinson*, 193 W.Va. 358, 359, 456 S.E.2d 202, 203 (1995).

2. Appellee notes, however, that while Mr. Atkinson characterized these improvements as gifts, he failed to claim those items as "gifts" on the financial disclosure statement that he filed with the Ethics Commission.

3. "Citing the Wood County indictment, the Administrative Director of the Courts filed a complaint with the Judicial Disciplinary Counsel, pursuant to Rule 2.14 of the *Rules of Judicial*

*Disciplinary Procedure*, and with the Judicial Investigation Commission." 193 W.Va. at 360, 456 S.E.2d at 204. Following Mr. Atkinson's acquittal on the state charges, he was awarded back pay pursuant to an order issued by this Court.

4. The obstruction of justice charges involved allegations that Mr. Atkinson had revealed information to a person under federal investigation.

5. The order reflects the Commission's conclusion that it had no express or implied authority to approve the requested reimbursement of fees as well as the Commission's finding that "the Governmental Tort Claims and Insurance Reform Act provides no basis for the Commission to reimburse Mr. Atkinson."

circuit court denied the writ of mandamus, by order entered on June 28, 1996.

Arguing that magistrates are county employees,[6] Appellant claimed entitlement to the protections of the Tort Claims Act. The circuit court examined the provisions of the Tort Claims Act, and determined as an initial matter, that a magistrate is not a county employee and is therefore, "not subject to the provisions of the statute." The lower court's conclusion regarding the inapplicability of the Torts Claim Act was strengthened by its observation that the "statute[s] only concern[ ] expenses incurred in the defense of *civil* actions or proceedings to recover damages for injury, death or loss caused by the employee." The circuit court opined additionally that Mr. Atkinson had filed "a frivolous claim in violation of Rule 3.1 of the Rules of Professional Conduct[,]"[7] based on this Court's observation in *Dyke v. City of Parkersburg*, 191 W.Va. 418, 446 S.E.2d 506 (1994), that the Torts Claim Act "does not provide for coverage in criminal actions to any public employee." 191 W.Va. at 420–21, 446 S.E.2d at 508–09 n. 3.

■ We first examine whether the lower court correctly concluded that a magistrate is not a county employee. In reaching its decision on this issue, the circuit court considered the following facts:

Although the statute [W. Va.Code § 50–1–1] creates a magistrate court in each county, the salaries of each magistrate are required to be paid by the state; the training and supervision of magistrates is expressly vested in the Supreme Court of Appeals; the conduct of their affairs is controlled by the Code of Judicial Conduct, adopted, promulgated and enforced by the Supreme Court of Appeals; a magistrate may be censured or temporarily suspended by the Supreme Court of Appeals; a vacancy in

the office is temporarily filled by the chief judge of the circuit court; the official actions of a magistrate are subject to review by the judge of the circuit court; their workload and number of hours required of them in their duties is under the direction and regulation of the chief judge of the circuit court; their jurisdiction is strictly limited by the state legislature, who also prescribes their qualifications for office; the laws for the violation of which they have authority to punish are those promulgated by the state; their administrative and personnel policies and regulations are promulgated and supervised by the Supreme Court of Appeals.

Based on these considerations, the lower court concluded that:

In short, West Virginia magistrates have none of the indicia which could conceivably result in their being considered officers or employees of the county. The county commission, which is the governing body of the county, has absolutely no control over the duties, qualifications or remuneration of magistrates. It cannot hire, fire, suspend, censure or control them. It has absolutely no supervisory authority over them. Nor when magistrates act do they act on behalf of or for any political subdivision.

■ The pivotal consideration in determining whether an individual is an employee of a given entity is whether the purported employer has the power of control over the individual. *See Woodall v. International Bhd. of Elec. Workers, Local 596*, 192 W.Va. 673, 677, 453 S.E.2d 656, 660 (1994). Upon examination, none of the indicia necessary to a determination of who has the power of control over a magistrate suggests that a magistrate is a county employee. The county does not set or provide the funds for a magistrate's salary;[8] similarly, the county

---

**6.** The definition upon which Appellant relies to assert that he is a county employee subject to the provisions of the Tort Claims Act describes a county employee as "any elected or appointed official of a political subdivision." W. Va.Code § 29–12A–3(a).

**7.** Rule 3.1 of the Rules of Professional Conduct states, in relevant part, that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis

for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."

**8.** By law, however, the county commission does provide certain resources necessary for the operation of the county court system. West Virginia Code § 50–1–11 (1994) provides that "[a]ll expenses of acquiring or renting offices [for magistrates] and utility and telephone expenses shall be paid by the county." That section provides

has no control over magistrates with respect to qualifications, duties, supervision, suspension, or censure. *See Paxton v. Crabtree*, 184 W.Va. 237, 248, 400 S.E.2d 245, 256 (1990) (observing that "the magistrate office is a part of the judicial system"). The circuit court aptly identified the limited affiliation of a magistrate to a particular county, in stating that:

> the only connection magistrates have to the county ... [is] that they are elected by the voters of the county and the county boundaries define the extent of their jurisdiction. They are no more employees of the county commission than are circuit judges or members of the county board of education. They are state officers whose jurisdiction is limited to the county in which they preside.

Another basis upon which Appellant relies to support his position that magistrates are county employees is their inclusion within a statute that affects the removal of "county, school district and municipal officers having fixed terms." *See* W. Va.Code § 6–6–7 (1993).[9] While the circuit court did not address the implications of magistrates being subject to removal pursuant to West Virginia Code § 6–6–7, the inclusion of magistrates within this statute has no real bearing on the issue of a magistrate's employment status.

The statute merely outlines the procedural mechanism for initiating complaints against certain public officers regarding office mishandling. While a county commission has the authority to file charges against a magistrate, the hearing regarding such charges is before a "three-judge court consisting of three circuit judges of the state" and is subject to appeal to this Court. W. Va.Code § 6–6–7(c), (d).[10] Thus, it cannot even be posited that the Commission has the power to remove a magistrate from office; it only has the power to file charges of official misconduct against a magistrate.

In resolving the issue of whether Appellant was a county employee while serving as a magistrate, the circuit court thoroughly considered and identified the various factors that affect a decision regarding the employment nature of the magistrate position. Accordingly, we find no basis for error with regard to the circuit court's conclusion that a magistrate is not a county employee.[11] Given the numerous indicia of control identified by the circuit court, there can be no question that a magistrate is an employee of the state, rather than an employee of the county that elected him/her to office.

■ The second basis upon which the circuit court denied the writ of mandamus was its conclusion that the Tort Claims Act does

---

further that "[a]ll other expenses, including, but not limited to, expenses for furniture, equipment and supplies, shall be paid by the State." *Id; see also* W. Va.Code § 7–3–2 (1993) (discussing duty of county commission to provide "a suitable courthouse and jail, together with suitable offices for the judge of the circuit court and judges of courts of limited jurisdictions").

9. West Virginia Code § 6–6–7 provides, in pertinent part, that:

(a) Any person holding any county, school district or municipal office, including the office of member of a board of education and the office of magistrate, the term or tenure of which office is fixed by law, whether the office be elective or appointive, except judges of the circuit courts, may be removed from such office in the manner provided in this section for official misconduct, malfeasance in office, incompetence, neglect of duty or gross immorality or for any of the causes or on any of the grounds provided by any other statute.

(b) Charges may be preferred:

(1) In the case of any county officer, member of a district of education or magistrate, by

the county commission, or other tribunal in lieu thereof....

10. When West Virginia Code § 6–6–7 was first enacted in 1863, it provided for the predecessor of the county commission, the county court, to remove different public officers from office. The statute was declared unconstitutional as the county court was declared to have no authority to exercise judicial powers. *See Arkle v. Board of Comm'rs*, 41 W.Va. 471, 23 S.E. 804 (1895). Since the statute now provides for the impaneling of circuit court judges by this Court to hear the charges and issue rulings on removal petitions, this section of the Code is no longer unconstitutional. *See McDonald v. Guthrie*, 43 W.Va. 595, 27 S.E. 844 (1897).

11. Appellant's reliance on the definition of employee found within the Tort Claims Act is further misplaced based on this Court's prior conclusion that the Act does not apply to criminal matters. *Cf.* W. Va.Code § 29–12A–3(a); *Dyke*, 191 W.Va. at 420–21, 446 S.E.2d at 508–09 and n. 3.

not apply to criminal matters. This Court squarely addressed the issue of the Act's applicability to cases such as the instant one when we stated in *Dyke:* "The language in the Tort and Insurance Reform Act is unambiguous: It is clear that *this Act affects only civil suits against the public employee.*" 191 W.Va. at 421, 446 S.E.2d at 509 (emphasis supplied). While Appellant admits in one section of his brief that "[t]he language of the Statute [W. Va.Code § 29–12A–11(a) ] refers only to loss due to a 'civil action and like proceedings' in any State or Federal Court[,]" he nonetheless continues to argue that the Tort Claims Act requires the Commission to pay his attorneys' fees. As part of his argument, Appellant fallaciously submits that we held, in *Powers,* that the Tort Claims Act has equal application in both civil and criminal cases. Since the *Powers* decision predates the enactment of the Tort Claims Act in 1986, Appellant's position in this regard is obviously erroneous.

■ While the Tort Claims Act is clearly an improper vehicle for seeking reimbursement of Appellant's attorneys' fees, this Court held in syllabus point two of *Powers* that "[w]here a county official incurs a loss in the discharge of his official duty in a matter in which the county has an interest, and in the discharge of a duty imposed or authorized by law and in good faith, the county has the power to appropriate funds to reimburse him, unless expressly forbidden." 170 W.Va. at 153, 291 S.E.2d at 468. The prerequisites for seeking reimbursement of attorneys' fees were explained in *Powers:*

> The rules governing whether a public official is entitled to indemnification for attorneys' fees are the same in both the civil and criminal context. In order to justify indemnification from public funds the underlying action must arise from the discharge of an official duty in which the government has an interest; the officer must have acted in good faith; and the agency seeking to indemnify the officer must have either the express or implied power to do so.

Syl. Pt. 3, 170 W.Va. at 153, 291 S.E.2d at 468. Thus, the inapplicability of the Tort Claims Act is not conclusive of the issue of Appellant's entitlement to indemnification for his attorneys' fees.

■ Appellant suggests that the not guilty verdict, and the speed with which such verdict was reached,[12] is determinative of his entitlement to reimbursement of his attorneys' fees. The rendering of a not guilty verdict alone, however, is not sufficient to establish a duty to pay such fees. In *Powers,* we observed that "exoneration either by a preliminary dismissal or a verdict of not guilty in an ordinary criminal prosecution is not necessarily conclusive proof that the official acted in good faith and was within the scope of his official duties." 170 W.Va. at 159, 291 S.E.2d at 474. We later held in *Dyke* that, "[a] not guilty verdict in a criminal case is not conclusive evidence that the public employee has fulfilled all the criteria listed in *Powers v. Goodwin,* 170 W.Va. 151, 291 S.E.2d 466 (1982). Rather, the verdict should be considered along with the other evidence." Syl. Pt. 2, 191 W.Va. at 419, 446 S.E.2d at 507.

While *Powers* clearly permits indemnification of a public official in either a civil or criminal context, Appellant must first meet the three criteria established in *Powers* as a prerequisite to reimbursement of attorneys' fees. 170 W.Va. at 153, 291 S.E.2d at 468. Based on our affirmance of the circuit court's ruling that the Commission does not have a statutory obligation to reimburse Appellant under the Tort Claims Act, Appellant will have to · identify an entity other than the Commission from which to seek indemnification if he desires to proceed in his attempts to collect attorneys' fees. Furthermore, the lower court would have to hold a hearing to determine whether the acts giving rise to the criminal charges brought against Magistrate Atkinson were performed in good faith and within the scope of his official duties.

In the event that Appellant decides to seek recoupment of attorneys' fees from a state agency, the significant, preliminary issue of whether a state agency can be required to pay the reasonable attorneys' fees incurred in connection with a public official's success-

---

12. The jury deliberated only eight minutes before reaching its verdict.

ful defense of criminal charges would have to be addressed.[13] This particular issue has never been squarely addressed by this Court. The obvious hurdle presented in attempting to bring suit against a state agency is the constitutional prohibition against suing the state. *See* W. Va. Const. art. VI, § 35; *Thomas v. Board of Educ.*, 167 W.Va. 911, 917, 280 S.E.2d 816, 819 (1981) (noting that sovereign immunity has been interpreted to include state agencies). We make no determination regarding whether Appellant can successfully avoid the constitutional bar against suing a State agency, as that issue is not properly before us. We note, however, that this issue will have to be addressed by the circuit court if Appellant seeks to name a state agency as a party in connection with his recoupment efforts.

We further observe that the *Powers* decision is not dispositive of whether Appellant can successfully seek indemnification from a state agency. In *Powers*, the public official involved was a county official, rather than a state official. Thus, the issue of sovereign immunity was not present in that case. The subsequent enactment of the Torts Claims Act in 1986, which limits suits against political subdivisions to specified civil claims and provides indemnification for public employees in certain civil actions, certainly implies a legislative intent to exclude indemnification in proceedings that involve criminal allegations.[14] *See* W. Va.Code §§ 29–12A–4, –11. Most states, as we commented in *Powers*, resolve "the issue of indemnification for attorneys' fees incurred in criminal prosecutions arising from the discharge of official duties" by statute. 170 W.Va. at 158, 291 S.E.2d at 473 and n. 4. Finally, we recognize that a significant aspect of the *Powers* holding was that the agency must have "either the express or implied power" to indemnify

the person seeking attorneys' fees. Syl. Pt. 3, in part, 170 W.Va. at 153, 291 S.E.2d at 468. Obviously, if it is determined that a state agency is immune from suits seeking indemnification for attorneys' fees incurred in criminal prosecutions by public officials, then the *Powers* requirement of express or implied power to indemnify could not be met.

Based on the foregoing, the decision of the Circuit Court of Wood County is hereby affirmed.

Affirmed.

---

**13.** That issue has not been briefed or addressed in any way by the parties due to the procedural history of this case.

**14.** The enactment of the Tort Claims Act subsequent to this Court's decision in *Powers* certainly suggests a need to revisit the decision reached in *Powers*. By its express indemnification of employees of political subdivisions in civil actions, the Tort Claims Act seems to imply the absence of comparable indemnification in criminal pro-

ceedings. *See* W. Va.Code § 29–12A–11. We noted in *Powers* that most states deal with the issue of indemnification by statute. Had the Tort Claims Act been in place when *Powers* was decided, an entirely different outcome may have been reached. Given the unresolved nature of this issue, we encourage the Legislature to address the issue of indemnification of state officials for attorneys' fees incurred in connection with criminal proceedings.