633 S.E.2d 17

**In the Matter of: Magistrate Clarence W. "Charlie" McCOURT, Jr., Magistrate for Upshur County.**

**No. 33068.**

Supreme Court of Appeals of West Virginia.

Submitted: June 6, 2006.

Decided: June 14, 2006.

Concurring and Dissenting Opinion of Justice Albright June 26, 2006.

Charles R. "Skip" Garten, Judicial Investigation Commission, Charleston, for Petitioner.

Dennis J. Willett, Nanners & Willett, L.C., Buckhannon, for Respondent.

PER CURIAM.

This case is before this Court upon the April 21, 2006, Request for Hearing of Magistrate Clarence W. "Charlie" McCourt, Jr., Magistrate for Upshur County. By our order of April 12, 2006, Magistrate McCourt was suspended without pay from his position as Magistrate by this Court pursuant to Rule 2.14(d)(2) of the West Virginia Rules of Judicial Disciplinary Procedure following a finding of probable cause that Magistrate McCourt had engaged in a serious violation of the Code of Judicial Conduct. This Court has before it the Request for Hearing, the briefs of the parties and all matters of rec-

ord. Following the arguments of the parties and a review of the record herein, this Court finds that the Rules of Judicial Conduct and existing case law support Magistrate McCourt's suspension without pay. Accordingly, this Court affirms the suspension without pay.

I.

FACTS

On March 25, 2006, Barbara Baire came before Magistrate McCourt to request a domestic violence protection order (hereinafter, "DVP order") after she was allegedly beaten by her husband, Jackie Baire.[1] Magistrate McCourt issued the DVP order as well as an arrest warrant for Mr. Baire. A representative of Women's Aid in Crisis took Mrs. Baire into a restroom at the magistrate court building and photographed Mrs. Baire's bruises. Mrs. Baire then left the magistrate court, but she did not return home because she was in fear for her life. Instead, she went to the Colonial Motel, which is located about 200 yards from the magistrate court building.

In the meantime, deputies from the Sheriff's office went to the Baire house to serve the DVP order and the arrest warrant on Mr. Baire. Magistrate McCourt contacted the 9–1–1 communication center several times to keep abreast of the situation, inquiring as to whether the deputies had entered the home and, at times, speaking directly to the deputies and offering them advice on how to proceed. Mr. Baire was finally taken into custody around 3:00 am on March 26, 2006. The recordings from the 9–1–1 communications center reflect that Magistrate McCourt was made aware of the arrest by one of the deputies, who also informed Magistrate McCourt that he had already contacted Mrs. Baire to let her know that her husband had been arrested and was in jail.

Nonetheless, at around 6:00 am on March 26, 2006, Magistrate McCourt called Mrs. Baire at the motel to tell her of her husband's arrest. Mrs. Baire allegedly had some questions about the legal process, which Magistrate McCourt attempted to an-

---

1. The beating apparently took place on March 24, 2006.

swer. However, Magistrate McCourt asserts that he did not believe that Mrs. Baire really understood the process, so he asked if he could come by her motel room to talk to her about it some more. Mrs. Baire agreed, and Magistrate McCourt walked over to the motel.

Magistrate McCourt maintains that he was only briefly at the motel (ten minutes by his account) and that he stood in the doorway the entire time he was at the motel. He asserts that he did not enter the motel room or otherwise act inappropriately. Mrs. Baire, however, asserts that Magistrate McCourt came into the room and began to ask her questions about the case. She alleges that Magistrate McCourt asked specifically to see her bruises, which were covered by her clothing. Mrs. Baire allegedly asked if it would help her case, and Magistrate McCourt allegedly responded that it would. Mrs. Baire asserts that she tried to pull her pants leg up to show him the bruises on her legs, but was unable to do so. She then allegedly lowered her pants to her knees to show Magistrate McCourt the bruises. Magistrate McCourt allegedly told Mrs. Baire to turn around so he could check the backs of her legs. Magistrate McCourt also allegedly asked Mrs. Baire whether she had any bruising on her inner thighs and bent down to take a closer look.

Magistrate McCourt next allegedly asked whether Mrs. Baire had any bruising on her chest, and she answered affirmatively. He allegedly asked to see those bruises as well, and Mrs. Baire lifted her shirt. Magistrate McCourt then allegedly touched a bruise on the top of Mrs. Baire's breast as well as an area below her nipple. Mrs. Baire asserts that Respondent then went into the bathroom for several minutes before coming back out and sitting next to her on the bed. She

states that she was very uncomfortable, and Magistrate McCourt left soon thereafter. On his way out, though, he allegedly asked to see the bruise on Mrs. Baire's breast again. She declined to show him the bruise again. Magistrate McCourt then allegedly instructed Mrs. Baire not to tell anyone that he had come to the room.

The following day, Mrs. Baire told a Women's Aid in Crisis worker what had occurred in the motel room. She subsequently filed a complaint against Magistrate McCourt with the Judicial Investigation Commission on April 10, 2006.[2]

On April 10, 2006, the Administrative Director of the Courts filed a complaint against Magistrate McCourt alleging that the magistrate had engaged in a serious violation of Canon 2A of the Code of Judicial Conduct.[3] On April 12, 2006, this Court entered an Order finding probable cause that Magistrate McCourt had engaged in a serious violation of the Code of Judicial Conduct and suspended him from his duties as a magistrate without pay. Formal charges were filed on April 18, 2006, following which Magistrate McCourt filed a written request for a hearing on the issue of his temporary suspension without pay.[4] It is that request that brings us here today.

## II.

### DISCUSSION

We have long ascribed to the belief that "[t]he purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice." Syl., *Matter of Gorby*, 176 W.Va. 16, 339 S.E.2d 702 (1985). We recently reiterated

---

**2.** The West Virginia State Police are currently investigating the matter. No charges have yet been filed.

**3.** Canon 2A of the Code of Judicial Conduct states:

A judge shall respect and comply with the law, shall avoid impropriety and the appearance of impropriety in all of the judge's activities, and shall act at all times in a manner that pro-

motes public confidence in the integrity and impartiality of the judiciary.

**4.** On May 5, 2006, Magistrate McCourt moved the Judicial Hearing Board to continue its own hearing in this matter pending a criminal investigation and the possible filing of further complaints against Magistrate McCourt. The Judicial Hearing Board granted the motion on May 12, 2006, and set the matter for hearing on September 25, 2006.

our commitment to that principle in *In re Toler*, 216 W.Va. 743, 747, 613 S.E.2d 604, 608 (2005), wherein we stated, "This Court will not retreat from its duty to the justice system."

In *Toler*, a magistrate had been suspended without pay following his indictment on criminal charges. Though he was subsequently acquitted of those charges, this Court declined to lift his suspension without pay pending the completion of an investigation by the Judicial Investigation Commission.

There can be no doubt that this Court has the power to suspend a magistrate without pay based upon an allegation that he or she has acted in violation of the Code of Judicial Conduct. Rule 2.14(d)(2) of the Rules of Judicial Disciplinary Procedure states that:

> If the Court finds probable cause pursuant to Rule 2.14(c)[5] to believe that a judge has engaged or is currently engaging in a serious violation of the Code of Judicial Conduct or has become unable or unwilling to perform official duties, the Court may direct that the judge not hear any further civil or criminal matters or perform other judicial functions while the matter is pending, with or without pay.

With Rule 2.14(d)(2) in mind, we have recognized that "[w]hen the integrity of the judiciary is placed into question by the action or conduct of any judge, this Court is authorized to impose an interim suspension pending the disposition of the charges against the judge *or until the underlying judicial disciplinary proceeding is completed." Matter of* Grubb, 187 W.Va. 228, 231, 417 S.E.2d 919, 922 (1992) (emphasis added).

Magistrate McCourt contends that the Disciplinary Counsel failed to conduct a complete investigation into the allegations against him and that he was not afforded an opportunity to defend himself prior to his suspension. Though he recognizes that a public office is not a property interest,[6] Magistrate McCourt argues that his constitutionally protected rights have been ignored inasmuch as he enjoys a pecuniary interest in his publicly-elected position. Magistrate McCourt also points out that, unlike the respondents in *Grubb* and *Toler*, he has not yet been charged criminally; and he argues that, accordingly, it is his very suspension without pay that casts doubt upon the "honor, integrity, dignity, and efficiency of the judiciary." We disagree.

Magistrate McCourt's uncontested actions in this matter raise profound question which directly implicate the issue of public confidence in the judicial process.[7] Indeed, as he admits, Magistrate McCourt is also now currently under criminal investigation by the West Virginia State Police and may well face criminal charges for his alleged actions. Both investigations (both disciplinary and criminal) into his alleged behavior and the underlying uncontested matters present herein directly implicate the "honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice."

We are satisfied that sufficient evidence currently exists in this matter to believe that Magistrate McCourt has engaged in a seri-

---

5. Rule 2.14(c) of Rules of Judicial Disciplinary Procedure states that:
   Upon receipt of the report, from the Chief Justice, the Supreme Court shall determine whether probable cause exists. A finding of probable cause hereunder shall be in lieu of a probable cause finding made pursuant to Rule 2.7(c). If it is determined that probable cause exists, the Court may:
   (1) direct the Disciplinary Counsel to file formal charges with the Clerk of the Supreme Court; and,
   (2) provide notice to the judge of a right to a hearing on the issue of temporary suspension, said hearing to be in not less than 30 days; with the judge provided notice of the hearing in not less than 20 days before the proceeding; or

(3) in the alternative, remand the complaint for proceedings pursuant to Rules 2.7(d) and Rule 4.

6. See, *Moore v. Strickling*, 46 W.Va. 515, 33 S.E. 274 (1899).

7. We recognize that many of the matters raised in this case are, at this time, only allegations. Other matters, such as Magistrate McCourt's involvement in the activities of the Sheriff's investigation of Mrs. Baire's domestic violence charge and his trip to the motel where Mrs. Baire was staying appear to be uncontested. The merits of the underlying ethical charges are not currently before this court.

ous violation of the Code of Judicial Conduct and that the suspension of Magistrate McCourt without pay is justified. We decline to proceed further into a consideration of the merits of the underlying ethics complaint in view of the pending investigation below. As we pointed out in *Toler*, "[w]hen the record in an action or suit is such that an appellate court can not in justice determine the judgment that should be finally rendered, the case should be remanded to the trial court for further development." Syl. Pt. 2, *South Side Lumber Co. v. Stone Construction Co.*, 151 W.Va. 439, 152 S.E.2d 721 (1967). Here, the Judicial Hearing Board has not even heard the allegations brought before it. In this case, that trial court is the Judicial Hearing Board, and the further development of the record must come from a full hearing before that board. *Toler*, 216 W.Va. at 747, 613 S.E.2d at 608. We encourage the parties to proceed below without unnecessary delay.

Consistent with our duty to the integrity of this State's judicial system, we reaffirm our decision that Magistrate McCourt be suspended without pay until the underlying judicial disciplinary proceeding is completed. Should Magistrate McCourt be exonerated by the pending disciplinary investigation, he may return to this Court to seek backpay. See, *Matter of Grubb*, 187 W.Va. 228, 234, 417 S.E.2d 919, 925 (1992). As in *Grubb*, here "we find that the overriding public interest in preserving the integrity of the judiciary demands that we subordinate the personal interests of [Magistrate McCourt] . . . ." *Id.*

## III.

## CONCLUSION

Accordingly, we affirm Magistrate McCourt's suspension without pay pending the outcome of judicial disciplinary proceedings.

Reconsideration denied.

ALBRIGHT, Justice, concurring, in part, and dissenting, in part.

(Filed June 26, 2006)

I necessarily concur in that portion of the majority opinion which upholds this Court's indisputable power to suspend a judicial officer, with or without pay, for alleged violations of the Code of Judicial Conduct. Nevertheless, I write separately to explain why I disagree with how that power is often employed without full consideration of the circumstances of each particular case which might justify suspension with pay. In the absence of such full consideration, unjust consequences might well follow from an unwavering practice of always suspending accused judicial officers without pay.

At the initial stage of the judicial investigation process in similar cases, I generally vote for suspension of the individual with pay—especially when material facts are genuinely in dispute. As the majority acknowledges, we have little information before us when we are called upon to make the probable cause determination on complaints alleging serious transgression of the Code of Judicial Conduct. When such complaints involve significant factual disputes, I believe that justice is best served by allowing the trier of fact, the Judicial Hearing Board, to do its job of hearing evidence before such harsh action as withholding pay is taken by summary action of this Court.

There is no question that the magistrate in the case at hand acted in a manner inappropriate to his office when he went to the victim's hotel room. Nevertheless, what occurred during that visit is highly contested by the parties to the disciplinary proceeding. Indeed, the factual dispute begins with whether the magistrate actually entered the room and continues through what transpired between the parties after that point and extends to how long the encounter lasted. To routinely deprive an accused judicial officer of a source of income while defending a judicial misconduct charge under such contested factual circumstances is hardly representative of the hallmark of the judiciary—fairness.

In the present case, not only are the material facts hotly contested but the magistrate has also represented that he has no other source of income with which to readily develop a competent defense against the

charges levied. Under such circumstances, fairness dictates that suspension from duty must occur to preserve public confidence in the judicial system because of the serious misbehavior which has been alleged. I believe fairness also demands that the magistrate should not be summarily denied pay by this Court without full and fair consideration of the particular facts and circumstances of his case.

Accordingly, I concur with the majority regarding this Court's authority to suspend the subject magistrate without pay. However, I dissent generally with the majority's indiscriminate manner of deciding to indefinitely suspend judicial officers without pay whenever a transgression of judicial conduct rules is alleged, I also dissent from the specific decision to suspend the magistrate named in this case without pay.

I am authorized to state that Justice STARCHER joins in this separate opinion.