648 S.E.2d 19

**In the Matter of Magistrate Carolyn D. CRUICKSHANKS, Magistrate for Braxton County.**

No. 33336.

Supreme Court of Appeals of West Virginia.

Submitted: May 9, 2007.

Decided: June 6, 2007.

Concurring and Dissenting Opinion of Justice Albright June 27, 2007.

Concurring Opinion of Justice Maynard June 29, 2007.

Charles R. Garten, Esq., Judicial Disciplinary Counsel, Judicial Investigation Commission, Charleston, for Petitioner.

James Wilson Douglas, Esq., Law Office of James Wilson Douglas, Sutton, for Respondent.

BENJAMIN, Justice.

This case is before this Court upon the March 22, 2007, Motion for Hearing of Magistrate Carolyn D. Cruickshanks, Magistrate for Braxton County. By our order of March 15, 2007, Magistrate Cruickshanks was suspended without pay from her position as Magistrate pursuant to Rule 2.14 of the West Virginia Rules of Judicial Disciplinary Procedure following a finding of probable cause that Magistrate Cruickshanks had engaged in a serious violation of the Code of Judicial Conduct. This Court has before it the Motion for Hearing as well as a Motion to be

Suspended with Pay, the briefs of the parties and all matters of record. Following the arguments of the parties and a review of the record herein, this Court finds that the Rules of Judicial Conduct and existing case law support Magistrate Cruickshanks' suspension without pay. Accordingly, this Court affirms the suspension without pay.

## I.

### FACTS

Magistrate Cruickshanks is the mother of Jordan Grubb, who is incarcerated in the Central Regional Jail (hereinafter, "the jail") following his conviction for delivery of a controlled substance. On or about February 7, 2007, Grubb contacted his mother by phone and asked her to provide him with copies of certain legal documents. It would later be alleged in a criminal complaint that those documents contained the statement of Philip Dailey, who was a witness against Grubb. Dailey had given his testimony as part of a plea deal with the State. Dailey is also an inmate at the jail.

The criminal complaint further alleges that Grubb told Magistrate Cruickshanks that he intended to get Dailey moved out of the pod in which he was currently housed and into the protective custody pod "where all the baby rapers and snitches were." Grubb allegedly explained to Magistrate Cruickshanks that he needed to show the other inmates in Dailey's current pod the statements which Dailey had made to authorities, apparently to prove that Dailey was a "snitch." Magistrate Cruickshanks obtained the requested documents from Grubb's attorney and delivered them to Grubb during a visit with him at the jail.

Grubb distributed the information his mother had given him to other inmates in the area where Dailey was housed. Dailey, who had apparently been having trouble with his fellow inmates at the jail since Grubb's arrival, then reported to his mother that he was fearful that he was "going to get jumped" after Grubb had slipped the documents under the door of Dailey's pod. Dailey reported that the other inmates in the pod "called him out" and "told him that he needed to go."

Dailey was subsequently moved elsewhere in the jail for his own safety.

Grubb then called Magistrate Cruickshanks from the jail, apparently to tell her of the success of his plan. In accordance with the jail's policy, the call was monitored and recorded. On the recording of the call, Magistrate Cruickshanks is allegedly heard to say, "Well that was your plan, wasn't it?" Upon Grubb's affirmative reply, Magistrate Cruikshanks said, "Well, that's what he gets."

Dailey, who had seen the documents that were slipped under the door by Grubb, later identified the documents as a copy of the plea agreement which he had entered into with the State as well as a copy of the proceedings in Dailey's plea hearing before the Circuit Court of Braxton County. Another inmate who had seen the documents slipped under the door identified them as the same documents identified by Dailey. That same inmate also told authorities that he saw Grubb distribute at least parts of those documents to Dailey's pod.

On March 12, 2007, Magistrate Cruickshanks was arrested and charged under W. Va.Code § 61–10–31 with conspiracy to commit an offense against the State of West Virginia, that offense being retaliation against a witness as set forth in W. Va.Code § 61–5–27(c). Upon being made aware of her arrest and the charges pending against her, this Court issued an Order on March 12, 2007, finding that Magistrate Cruickshanks had been charged with a serious offense within the meaning of Rule 2.14 of the West Virginia Rules of Judicial Disciplinary Procedure. Magistrate Cruickshanks was suspended with pay. On March 13, 2007, the Administrative Director of the Courts filed a complaint against Magistrate Cruickshanks with the Judicial Disciplinary Counsel alleging that Magistrate Cruickshanks had violated Canons 2A and 2B of the Code of Judicial Conduct.

On March 14, 2007, the Office of Judicial Disciplinary Counsel presented its report to the Court. The Court entered an Order the following day finding probable cause and suspending Magistrate Cruickshanks without pay, pursuant to Rule 2.14(d)(2) of the West

Virginia Rules of Judicial Disciplinary Procedure. Magistrate Cruickshanks subsequently filed her Motion for Hearing as well as a later Reply to Complaint denying any and all ethical misconduct.

## II.

## DISCUSSION

■ This Court has long recognized that "[t]he purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice." Syl., *Matter of Gorby*, 176 W.Va. 16, 339 S.E.2d 702 (1985). We reiterated our commitment to that principle in *In re Toler*, 216 W.Va. 743, 747, 613 S.E.2d 604, 608 (2005), wherein we stated, "This Court will not retreat from its duty to the justice system."

■ In order to carry out this duty, the Court has established the Rules of Judicial Disciplinary Procedure. Rule 2.14(d)(2) states that:

If the Court finds probable cause pursuant to Rule 2.14(c) [1] to believe that a judge has engaged or is currently engaging in a serious violation of the Code of Judicial Conduct or has become unable or unwilling to perform official duties, the Court may direct that the judge not hear any further civil or criminal matters or perform other judicial functions while the matter is pending, with or without pay.

This power to suspend was explained in the Syllabus Point of *Matter of Grubb*, 187 W.Va. 228, 417 S.E.2d 919 (1992):

Under the authority of article VIII, sections 3 and 8 of the West Virginia Constitution and Rule II(J)(2) of the Rules of Procedure for the Handling of Complaints Against Justices, Judges, Magistrates and Family Law Masters, the Supreme Court of Appeals of West Virginia may suspend a judge, who has been indicted for or convicted of serious crimes, without pay, pending the final disposition of the criminal charges against the particular judge or until the underlying disciplinary proceeding before the Judicial Investigation Commission has been completed.

In this case, Magistrate Cruickshanks is accused of violating Canons 2A and 2B of the Code of Judicial Conduct:

CANON 2. A JUDGE SHALL AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL OF THE JUDGE'S ACTIVITIES

A. A judge shall respect and comply with the law, shall avoid impropriety and the appearance of impropriety in all of the judge's activities, and shall act *at all times* in a manner that promotes public confidence in the integrity and impartiality of the judiciary (emphasis added).

B. A judge shall not allow family, social, political, or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or knowingly permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness.

Specifically, it is alleged that Magistrate Cruickshanks participated in a conspiracy with her son, Grubb, to retaliate against a fellow inmate who was a witness against Grubb by delivering to Grubb certain documents which he used to show other inmates

---

1. Rule 2.14(c) of Rules of Judicial Disciplinary Procedure states that:

Upon receipt of the report, from the Chief Justice, the Supreme Court shall determine whether probable cause exists. A finding of probable cause hereunder shall be in lieu of a probable cause finding made pursuant to Rule 2.7(c). If it is determined that probable cause exists, the Court may:

(1) direct the Disciplinary Counsel to file formal charges with the Clerk of the Supreme Court; and,

(2) provide notice to the judge of a right to a hearing on the issue of temporary suspension, said hearing to be in not less than 30 days; with the judge provided notice of the hearing in not less than 20 days before the proceeding; or

(3) in the alternative, remand the complaint for proceedings pursuant to Rules 2.7(d) and Rule 4.

that Dailey was a "snitch." Magistrate Cruikshanks denies that there was any conspiracy and asserts that whatever happened, it happened outside of her duties as a magistrate; therefore, she did not violate the Code of Judicial Conduct.[2] However, as highlighted above, Canon 2A admonishes members of the judiciary to "act *at all times* in a manner that promotes public confidence in the integrity and impartiality of the judiciary." (Emphasis added.)

Despite her denial of wrongdoing, Magistrate Cruickshanks acknowledges that the Court has the power to suspend her without pay. Nonetheless, she asks the Court to reconsider its decision and restore her pay. She asserts that her salary as a magistrate is her only source of income and points out that, usually, those magistrates suspended without pay while facing disciplinary action have already been convicted of crimes. Magistrate Cruickshanks has not been convicted.

■ Conviction is not, however, a predicate to suspension. In *In re McCourt*, 219 W.Va. 261, 633 S.E.2d 17 (2006), the magistrate in question had not even been charged criminally, let alone convicted, yet we upheld his suspension without pay. Such actions derive from our duty to promote and protect the honor, integrity, dignity, and efficiency of the judiciary and the justice system.

■ We decline to create a bright-line rule for determining when a suspension should be with pay as opposed to without pay.[3] Every case is different. The circumstances for each case are unique. A bright-line rule is unworkable and impractical. As a Court, we review matters of suspension stemming from accusations of judicial misconduct on a case-by-case basis.

■ Always mindful of the primary consideration of protecting the honor, integrity, dignity, and efficiency of the judiciary and the justice system, this Court, in determining whether to suspend a judicial officer with or without pay, should consider various factors, including, but not limited to, (1) whether the charges of misconduct are directly related to the administration of justice or the public's perception of the administration of justice, (2) whether the circumstances underlying the charges of misconduct are entirely personal in nature or whether they relate to the judicial officer's public persona, (3) whether the charges of misconduct involve violence or a callous disregard for our system of justice, (4) whether the judicial officer has been criminally indicted, and (5) any mitigating or compounding factors which might exist. Though the misconduct alleged here (retaliating against a witness) does not involve the disposition of any of the cases assigned to Magistrate Cruickshanks, we believe that it is still directly related to the administration of justice and, arguably, reveals a callous disregard by Magistrate Cruikshanks of the system of justice she took an oath to uphold. Retaliation against witnesses strikes at the core of our system of justice.

Magistrate Cruickshanks argues that the nature of her visit and phone conversations with her son are entirely personal in nature. We disagree. Magistrate Cruikshanks, a judicial officer, cannot so conveniently shed the obligations of her office. To permit a judicial officer to simply pick and choose when he or she wishes to be subject to the obligations of his or her judicial position would result in an unworkable system where ethics are subject to personal whims. The charges against Magistrate Cruikshanks present a disturbing

---

2. Magistrate Cruickshanks further argues that the documents were public in nature-open to anyone's inspection-and that she was merely acting as a courier between Grubb and his attorney. Magistrate Cruickshanks asserts that she did not even know what documents she was delivering as they were contained in a sealed envelope.

3. The matter cannot be taken lightly. In *Matter of Grubb*, we highlighted the New Jersey decision of *In re Coruzzi*, 95 N.J. 557, 472 A.2d 546 (1984), in which that court recognized the New Jersey Supreme Court's duty "to preserve public confidence in the judiciary by not allocating public funds to pay salary to members of the judiciary who have conducted themselves in a manner

that warrants suspension." *See Grubb*, 187 W.Va. at 233, 417 S.E.2d at 923. We are also cognizant that members of the judiciary, as elected public figures, may become the target of malicious and unwarranted accusations and prosecutions or of politically-motivated charges, especially in the time prior to elections, which may never prove to be true, but which may lead to a member of the judiciary being forced to defend his or her name. We must, therefore, ensure that each case before us is weighed on its own merits and that the process itself does not lend itself to the improper goals of malicious or politically-motivated accusations.

allegation of a judicial officer who abused her position in order to benefit her son or to retaliate against a witness against him. And while the charges of misconduct do not involve violence on the part of Magistrate Cruickshanks, the consequences of her alleged actions could easily have brought violence on Dailey and endangered his safety. Indeed, Dailey had to be moved into protective custody after the documents that Magistrate Cruickshanks allegedly delivered to her son were made available to Dailey's pod mates.

We are not insensitive to Magistrate's Cruickshanks' pleas that she not be deprived of her only source of income. However, should Magistrate Cruickshanks prevail in her criminal case as well as the pending disciplinary investigation, she is entitled to seek backpay to make her whole again. *Grubb,* 187 W.Va. at 234, 417 S.E.2d at 925. In the meantime, in the event she finds that she is unable to hire an attorney to defend the charges against her, she can file a *pauperis* affidavit and seek court-appointed counsel as any indigent defendant can.

In the end, our duty is to defend the integrity of the judicial system, and we believe that there exists here sufficient evidence to believe that Magistrate Cruickshanks has engaged in a serious violation of the Code of Judicial Conduct and that her suspension without pay is justified. Moreover, we believe that the profound nature of the pending criminal charges against Magistrate Cruickshanks seriously diminish the "public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice." As we have found before, "[w]e find that the overriding public interest in preserving the integrity of the judiciary demands that we subordinate the personal interests of [Magistrate Cruickshanks]...." *Grubb,* 187 W.Va. at 234, 417 S.E.2d at 925. This is such a case.

## III.

## CONCLUSION

Accordingly, we affirm our decision that Magistrate Cruickshanks be suspended with-

out pay until the underlying judicial disciplinary proceeding is completed.

Reconsideration denied.

ALBRIGHT, Justice, concurring, in part, and dissenting, in part.

I stand by my previously stated position [1] that this Court unquestionably has the disciplinary authority to withhold the pay of a judicial officer during suspension, but I remain equally committed in believing that the guiding force for exerting that power must be fairness determined by a balanced assessment of the circumstances. That goal was simply not reached in the majority opinion, and the new syllabus point adopted by the majority does nothing to promote such a just and balanced evaluation.

Syllabus point three in the majority opinion states:

> Always mindful of the primary consideration of protecting the honor, integrity, dignity, and efficiency of the judiciary and the justice system, this Court, in determining whether to suspend a judicial officer with or without pay, should consider various factors, including, but not limited to, (1) whether the charges of misconduct are directly related to the administration of justice or the public's perception of the administration of justice, (2) whether the circumstances underlying the charges of misconduct are entirely personal in nature or whether they relate to the judicial officer's public persona, (3) whether the charges of misconduct involve violence or a callous disregard for our system of justice, (4) whether the judicial officer has been criminally indicted, and (5) any mitigating or compounding factors which might exist.

220 W.Va. 513, 514, 648 S.E.2d 19, 20, 2007 WL 1660864 (W.Va. June 6, 2007). With the exception of an indictment, the evaluation the majority suggests begins with the skewed assumption that when we are confronted with the decision to suspend there is evidence giving this Court some basis to believe that

---

**1.** *See In Re McCourt,* 219 W.Va. 261, 265, 633 S.E.2d 17, 21 (2006) (Albright, concurring and dissenting).

misconduct *actually* has occurred. At the time this Court examined the complaint against the magistrate in the instant case, the only facts of which we were made aware were that the magistrate had been arrested pursuant to a criminal complaint charging the offense of retaliation against a witness. *Id.* at 21. Nothing was before us and no consideration was given to the possibility that the magistrate could have had a meritorious defense.[2] On this unvarnished allegation, we determined that the magistrate should not only be suspended but that the suspension be without pay.

Any charge, true or false, that is filed against a judicial officer raises incertitude about the integrity of the judicial system. Being responsible for the regulation of the judicial system, when this Court is notified that a serious charge such as a criminal offense is lodged against a judicial officer, suspension from performing judicial duties is most certainly warranted to offset any public perception that the judicial system may be anything but fair and honest. The arrest in such cases establishes the probable cause to believe a serious violation of the Code of Judicial Conduct has occurred. I certainly agree that a judicial officer in such cases should be suspended from duty until the matter is fully resolved in order to maintain public confidence in the judiciary. However, the additional sanction of taking away the officer's income based on no more information than a bald allegation is simply overkill. It mutates the regulatory function this Court should perform in addressing disciplinary matters into a punitive one at the very beginning of the case. That is improper.

There indeed may be times when a judicial officer's suspension will be without pay, but that must be determined on a case-by-case basis on factors that go far beyond an examination of the type of unsubstantiated charges that have been brought against the officer. I suggest that the determination about withholding pay should not be made until after the evidence has either been examined by an independent body, for example, when the officer has been indicted, an information has been filed by a prosecuting attorney on his oath of office after review of the evidence, or it otherwise becomes apparent that the charges have some sound basis and are not motivated by politics, retaliation or other improper intent.

I am also troubled with the cursory manner in which the majority opinion dismissed the magistrate's concern of losing her only source of income, especially since magistrates are among the lowest paid members of the judiciary. Losing a regular and sole source of income deserves more serious consideration than being told you have the hope to recoup the money at the end of what can be a lengthy process.[3] Likewise, to off-handedly say that a court-appointed attorney may be available if the officer does not have the resources to retain a lawyer shows no genuine appreciation for the serious problem raised. I have to wonder what message such impassive treatment of a judicial officer relays to members of the general public about how the judicial system operates or will operate if they were to come before it.

I fear that in its zeal to maintain the integrity of the judiciary, the majority actually is demonstrating unfairness in its regulation of the judicial system by acting before adequate evidence is adduced or is apparent. This fervor does little to promote public confidence in the reasoned fairness of the judiciary. As a result, while I concur with the majority opinion as to the authority of this Court to withhold the pay of a judicial officer, I steadfastly dissent from the majority's selection of criteria to make that determination and application of those factors to the magistrate in the instant case.

I am authorized to state that Justice Starcher joins in this separate opinion.

MAYNARD, Justice, concurring.

I wholeheartedly agree with the majority opinion's reasoning and disposition of this

---

2. Even *post-conviction* bail determinations include consideration of all facts and circumstances of the individual case, not the least of which is the "likelihood that a defendant will prevail." W.Va.Code § 62–1C–1(b); *see* Syl. Pt. 2, *State ex rel. Ghiz v. Johnson,* 155 W.Va. 186, 183 S.E.2d 703 (1971).

3. There is some indication that the special prosecutor in this case will not present the matter to this term of the grand jury.

case. I write separately to refute the partial dissent's accusation that a majority of this Court arbitrarily suspended Magistrate Cruickshanks' pay without a shred of evidence to support our decision.

Incredibly, the partial dissent avers that the majority unfairly suspended Magistrate Cruickshanks' pay based solely on "unsubstantiated," "unvarnished" and "bald" accusations, despite the fact that there have been two separate findings of probable cause. As noted in the majority opinion, Magistrate Cruickshanks was arrested and charged with conspiracy to retaliate against a witness. Obviously, this arrest required a finding by a judicial officer of probable cause. Thereafter, the Office of Judicial Disciplinary Counsel presented its report to this Court after it conducted an investigation into this matter, and this Court found probable cause to believe that Magistrate Cruickshanks violated certain canons of the Code of Judicial Conduct. Far from constituting "unsubstantiated," "unvarnished" and "bald" accusations, the facts and circumstances of this case raise a reasonable belief that Magistrate Cruickshanks likely committed the crime and violations charged. To suggest otherwise is to demean the impartial operation of the judicial system.

Specifically, there is probable cause to believe that Magistrate Cruickshanks gave to her incarcerated son, Jordan Grubb, legal documents containing the statements of Philip Dailey, who was a witness against Grubb and who is incarcerated in the same jail as Grubb. Grubb had explained to Magistrate Cruickshanks that he needed to show the other inmates in Dailey's pod the statements which Dailey had made to authorities for the apparent purpose of proving that Dailey was a "snitch." Thereafter, Grubb showed these documents to other inmates in Dailey's pod. The resulting animosity exhibited toward Dailey by these other inmates caused the jail authorities to move Dailey elsewhere in the jail. When Grubb later told Magistrate Cruickshanks of the success of his plan, she replied of Dailey, "Well, that's what he gets." Such conduct by an officer of the court is unconscionable and reprehensible and strikes at the heart of the efficient operation of the criminal justice system.

As set forth in the majority opinion, "[t]he purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice." Syllabus, *Matter of Gorby*, 176 W.Va. 16, 339 S.E.2d 702 (1985). I agree with the majority that the misconduct alleged, retaliating against a witness, is related to the administration of justice and a flagrant abuse of Magistrate Cruickshanks' position. This Court's suspension of Magistrate Cruickshanks without pay until the underlying judicial disciplinary proceeding is completed sends a strong message to judicial officers that they must scrupulously adhere to the Code of Judicial Conduct. It also helps to create public confidence in the integrity of judicial officers. Anything less than a suspension without pay in an egregious case like the instant one would likely create public cynicism.

In conclusion, the majority has a very sound basis for suspending Magistrate Cruickshanks without pay based not on "unsubstantiated," "unvarnished" and "bald" accusations but rather on facts and circumstances that give rise to probable cause to believe that Magistrate Cruickshanks violated the Code of Judicial Conduct. Accordingly, I concur.