728 S.E.2d 140

**In the Matter of Carol FOUTY, Magistrate for Kanawha County.**

No. 12–0446.

Supreme Court of Appeals of West Virginia.

Submitted June 6, 2012.

Decided June 12, 2012.

---

Teresa A. Tarr, Judicial Disciplinary Counsel, Charleston, WV, for Petitioner.

Michael J. Del Giudice, Charleston, WV, for Respondent.

PER CURIAM:

The case is before the Court upon the May 10, 2012, request for hearing [1] filed by Magistrate Carol Fouty, Magistrate for Kanawha County and respondent herein. By this Court's order of April 9, 2012, Magistrate Fouty was suspended without pay from her position as magistrate pursuant to Rule 2.14(d)(2) of the Rules of Judicial Disciplin-

---

1. The request for hearing is contained in the document filed as "Carol Fouty's Response to Statement of Charges and Motion to Lift Suspension."

ary Procedure[2] following a finding of probable cause that Magistrate Fouty has engaged or is currently engaged in a serious violation of the Code of Judicial Conduct, and further noting that the Magistrate previously had received a written admonishment in December 2011 for violating Canons 1A, 2A, 2B, 3A, 3B(1) and (2), and 3E(1)(a) of the Code of Judicial Conduct. Magistrate Fouty requested a hearing on the issue of her suspension without pay, which request was granted by order of this Court dated May 14, 2012. With due consideration to arguments of the parties and a review of the record herein, this Court finds that the Code of Judicial Conduct[3] and existing case law support Magistrate Fouty's suspension without pay. Accordingly, the Court affirms the suspension without pay.

## I. Factual and Procedural Background

Petitioner herein, Judicial Disciplinary Counsel (hereafter "Disciplinary Counsel"), alleges judicial misconduct of Magistrate Fouty in a five count Formal Statement of Charges. The charges are based on the March 6, 2012, complaint the Administrative Director of the Courts filed with Disciplinary Counsel as well as matters which surfaced during the investigation of the complaint, of which this Court was apprised by reports made by Disciplinary Counsel on March 19 and April 3, 2012. Following this Court finding that the reports established probable cause, Judicial Disciplinary Counsel filed a Formal Statement of Charges on April 9, 2012, as directed by this Court pursuant to Rule 2.14(c)(1). The allegations contained in each of the five counts of the Formal Statement of Charges is summarized below.

### Count I. Fisher Citation Dismissal

A State Trooper issued a citation to Melea Dawn Fisher on December 31, 2011, charging her with the misdemeanor offense of simple possession of Alazopram (Xanax). The face of the citation reflected that Ms. Fisher had until January 30, 2012, to appear in magistrate court to address the charge. Before January 30, Magistrate Fouty was contacted and asked by a person not involved in the criminal action to dismiss Ms. Fisher's ticket. The ticket was dismissed by Magistrate Fouty on January 30, 2012, without input or knowledge of any county prosecuting attorney or the State Trooper who issued the ticket.

In early February 2012, Magistrate Fouty hired Ms. Fisher at the request of a friend to work at the magistrate's residence. At the time she worked for the magistrate, Ms. Fisher did not have a car. On February 27, 2012, Magistrate Fouty asked Ms. Fisher to use the magistrate's car to run some errands for the magistrate. During this trip, the magistrate's car stalled in a parking lot and would not start. Ms. Fisher first called the man who had driven her to the magistrate's home to work, Mr. Estes, and then called the magistrate to inform her of the car problem. The magistrate said that she would have a tow truck sent to the location. Before the tow truck arrived, Ms. Fisher was able to get the car started. When Ms. Fisher drove the car from the parking lot, she went the wrong way on a city street where the two-lanes going in either direction are divided by a median strip. Ms. Fisher drove over the median strip to correct her error, at which point she was pulled over by a Charleston Police Officer who saw the erratic driving. The patrolman had Ms. Fisher exit the vehicle and perform standardized field sobriety tests. During this stop the patrolman determined that the brown container he saw Ms. Fisher push into her purse was a prescription bottle containing eleven Clonazepam (Klonopin) pills prescribed to someone other than Ms. Fisher. Mr. Estes, observing this series of events from a distance, called Magistrate Fouty to inform her that Ms. Fisher had been stopped by the police and to tell her that it looked like Ms. Fisher would be arrested. Magistrate Fouty asked Mr. Estes to put one of the officers at the scene on the phone. Neither of the officers complied.

Ms. Fisher was placed under arrest and transported to the police station. When Ms. Fisher's purse was inventoried at the station,

---

2. Rule 2.14 appears in its entirety in the Appendix herein.

3. *See* Appendix for text of relevant portions of the Code of Judicial Conduct referenced throughout this opinion.

0.6 grams of marijuana was found in a zippered container. As a result of the investigation and inventory, Ms. Fisher was charged with one misdemeanor count of first offense DUI and two misdemeanor counts of simple possession.

Magistrate Fouty called the magistrate court and spoke with the assistant of the magistrate on duty to ask about Ms. Fisher. The assistant said that Ms. Fisher had not yet been brought in for her initial appearance. Magistrate Fouty asked the assistant to ask the magistrate on duty if she would set a personal recognizance bond on Ms. Fisher at the initial appearance.[4]

At the same time that the arresting officer accompanied Ms. Fisher to magistrate court for the initial appearance, the State Trooper who had issued the citation to Ms. Fisher in December 2011 that Magistrate Fouty had dismissed was also present. The two officers began conversing and the Trooper informed the patrolman that he had cited Ms. Fisher with the misdemeanor offense of simple possession in December 2011. Hearing this, Ms. Fisher stated that the citation had been dismissed by Magistrate Fouty, which was confirmed by a check on the court's computer system.

Disciplinary Counsel asserts the information set forth in Count I establishes that Magistrate Fouty has violated: Canon 1; Canon 2A; Canon 2B; Canon 3A; Canons 3B(1), (2), and (7); Canon 3E(1)(a); Canon 4A(1), (2), and (3) and Canon 4D(1)(b) of the Code of Judicial Conduct.

## Count II. Shaffer Matter

Rodney P. Shaffer, Jr. was arrested on March 29, 2011, by the county sheriff's office for the felony offense of receiving stolen property. The charges were filed by criminal complaint in the magistrate court. Magistrate Fouty presided at Mr. Shaffer's April 7, 2011, preliminary hearing at which Magistrate Fouty found probable cause to bind the case over to the grand jury. At some point after the preliminary hearing, Magistrate Fouty asked Mr. Shaffer to do some concrete work at her house. Disciplinary Counsel proposes that Magistrate Fouty's conduct of asking Mr. Shaffer to perform concrete work at her house after she presided over his preliminary hearing represents violations of the same provisions of the Code of Judicial Conduct as Count I: Canon 1; Canon 2A; Canon 2B; Canon 3A; Canons 3B(1), (2), and (7); Canon 3E(1)(a); Canon 4A(1), (2), and (3) and Canon 4D(1)(b).

## Count III. Wright/Johnson Matters

Disciplinary Counsel alleges that Magistrate Fouty has had ex parte communication with Earl Wright about lowering bonds on several defendants for whom Mr. Wright has "facilitated" bonds. As part of this charge it is alleged that Magistrate Fouty made arrangements with Mr. Wright to obtain people who had appeared before her to do yard work and other jobs at her home. Mr. Wright then benefitted from the arrangement when he was paid the bond fee these people owed him from the money the magistrate paid them for their work. Christopher A. Johnson was used as an example in the Statement of Charges as to how this arrangement was carried out. For these activities, Magistrate Fouty is charged with further violations of Canon 1; Canon 2A; Canon 2B; Canon 3A; Canons 3B(1), (2), and (7); Canon 3E(1)(a); Canon 4A(1), (2), and (3) and Canon 4D(1)(b) of the Code of Judicial Conduct.

## Count IV. Justification of Surety

Disciplinary Counsel maintains that Magistrate Fouty has not complied with the circuit court's administrative order, in effect since January 12, 1998, making it mandatory for judicial officers to require that justification of surety be furnished. For improperly handling justifications of surety by not complying with the administrative order of the circuit court, Magistrate Fouty is charged with violating Canon 2A, Canon 3A, and Canon 3B(2).

## Count V. Arrest Warrant Recalls

The final Count in the Statement of Charges contains the allegation that Magistrate Fouty does not follow the proper procedures when recalling warrants outstanding

---

4. The magistrate on duty who conducted the initial appearance on the charges brought by the patrolman set a $5,000 surety bond with a 10% cash option.

on criminal defendants who voluntarily appear before her. The procedure Magistrate Fouty employs is prosed as a violation: Canon 1; Canon 2A; Canon 2B; Canon 3A; Canon 3B(1), (2), and (7); Canon 3E(1)(a); Canon 4A(1), (2), and (3) and Canon 4D(1)(b) of the Code of Judicial Conduct.

Magistrate Fouty filed her response to the statement of charges on May 10, 2012, which included a request that this Court set a hearing pursuant to Rule 2.14(c)(2) of the Rules of Judicial Disciplinary Procedure for the purpose of reconsideration of the decision to suspend the magistrate without pay while the disciplinary charges are pending. The Court granted the motion on the sole issue of suspension without pay by order entered on May 14, 2012.

## II. Discussion

This Court has consistently stressed that "[t]he purpose of judicial disciplinary proceedings is the preservation and enhancement of public confidence in the honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice." Syl., *In the Matter of Gorby*, 176 W.Va. 16, 339 S.E.2d 702 (1985). This purpose is the preeminent concern behind any decision regarding the suspension of a judicial officer without pay due to the allegation that the officer acted in violation of the Code of Judicial Conduct

This Court's power to suspend a magistrate or other judicial officer without pay during the pendency of disciplinary proceedings is stated in Rule 2.14(d)(2) of the Rules of Judicial Conduct. Matters of suspension due to accusations of judicial misconduct are reviewed and decided based on the unique facts and circumstances of each case. *In the Matter of Cruickshanks*, 220 W.Va. 513, 517, 648 S.E.2d 19, 23 (2007). Syllabus point three of *Cruickshanks* sets out the context and nature of the factors this Court considers when conducting such individualized review:

Always mindful of the primary consideration of protecting the honor, integrity, dignity, and efficiency of the judiciary and the justice system, this Court, in determining whether to suspend a judicial officer

with or without pay, should consider various factors, including, but not limited to, (1) whether the charges of misconduct are directly related to the administration of justice or the public's perception of the administration of justice, (2) whether the circumstances underlying the charges of misconduct are entirely personal in nature or whether they relate to the judicial officer's public persona, (3) whether the charges of misconduct involve violence or a callous disregard for our system of justice, (4) whether the judicial officer has been criminally indicted, and (5) any mitigating or compounding factors which might exist.

In her response to the statement of charges, Magistrate Fouty largely admits to the allegations in Count I relating to the dismissal of the Fisher citation; however, she denies or refutes the allegations in the remaining four counts. She does admit that she has been disciplined on prior occasion, but asserts that there has been no pattern or practice of similar conduct. Magistrate Fouty asserts that the punishment of an indefinite suspension while the disciplinary proceedings are pending is too severe for the conduct involved.

It is important to initially note that the merits of the underlying charges are not before this Court in this proceeding, nor is punishment the purpose of a suspension imposed during the pendency of a disciplinary proceeding. It bears repeating that the inquiry and focus of judicial suspension decisions during disciplinary proceedings is on whether the alleged misconduct implicates the "honor, integrity, dignity, and efficiency of the members of the judiciary and the system of justice" to the extent that suspension without pay is warranted. 176 W.Va. at 16, 339 S.E.2d at 702. We are satisfied that it does under the circumstances of this case.

There is probable cause in this case to believe that Magistrate Fouty engaged in serious violations of the Code of Judicial Conduct. The unilateral dismissal of a criminal charge, which she admits occurred in the Fisher case, is clearly improper. It directly relates to the administration of justice and the public's perception of the same. Arguably, this transgression alone may not war-

rant suspension without pay, however, the statement of charges contains multiple counts involving a variety of questionable judicial practices and activities, casting serious doubt on the integrity of the judicial system. The charges regard conduct calling into question the proper administration of justice as well as the judicial officer's public persona. As was recognized in the order of suspension, the seriousness of the present charges are further compounded by the existence of prior admonishments.[5] Having examined the unique circumstances of this case, we conclude that suspension without pay is justified.

We are not unsympathetic to the financial hardship this imposes on Magistrate Fouty, but our primary duty is to defend the integrity of the judicial system. Should the outcome of this disciplinary matter warrant, the magistrate may return to this Court to seek back pay. *See In the Matter of Grubb*, 187 W.Va. 228, 234, 417 S.E.2d 919, 925 (1992).

### III. Conclusion

Accordingly, we affirm our decision that Magistrate Fouty be suspended without pay pending the completion of the underlying judicial disciplinary proceeding.

Reconsideration denied.

### APPENDIX

RULES OF JUDICIAL DISCIPLINARY PROCEDURE

### Rule 2.14. Extraordinary Proceedings.

(a) When the Administrative Director of the Courts has received information that a judge (1) has been convicted of a serious offense, (2) has been indicted or otherwise charged with a serious offense, (3) has engaged or is currently engaging in a serious violation of the Code of Judicial Conduct, or (4) has become unable or unwilling to perform official duties, the Administrative Director may file a complaint with Disciplinary Counsel.

(b) Upon receipt of such complaint, Disciplinary Counsel shall conduct an immediate investigation and shall within ten days present to the Chief Justice of the Supreme Court a report indicating whether, in the opinion of Disciplinary Counsel, the integrity of the legal system has been placed into question by virtue of a judge's (1) having been convicted of a serious offense; (2) having been indicted or otherwise charged with a serious offense; (3) having engaged in or currently engaging in a serious violation of the Code of Judicial Conduct; or (4) inability or unwillingness to perform official duties. The Office of Disciplinary Counsel shall attempt to provide reasonable notice to the judge prior to the filing of this report.

(c) Upon receipt of the report, from the Chief Justice, the Supreme Court shall determine whether probable cause exists. A finding of probable cause hereunder shall be in lieu of a probable cause finding made pursuant to Rule 2.7(c). If it is determined that probable cause exists, the Court may:

(1) direct the Disciplinary Counsel to file formal charges with the Clerk of the Supreme Court; and,

(2) provide notice to the judge of a right to a hearing on the issue of temporary suspension, said hearing to be in not less than 30 days; with the judge provided notice of the hearing in not less than 20 days before the proceeding; or

(3) in the alternative, remand the complaint for proceedings pursuant to Rules 2.7(d) and Rule 4.

(d)(1) If the judge has been convicted of a serious offense or has been indicted or otherwise charged with a serious offense, the Chief Justice may order that the judge not hear any further civil or criminal matters or perform other judicial functions while the matter is pending, with or without pay. (2) If the Court finds probable cause pursuant to

---

5. The prior discipline for violations of the Code of Judicial Conduct proposed as aggravating factors in the Statement of Charges include: 2011 admonishment for helping a friend draft a peace bond on which the magistrate later found probable cause to issue (Complaint No. 12–2010); two admonishments in 2004, one for issuing a protec-tive order from her home for a neighbor/tenant of the magistrate (Complaint No. 73–2004), and the other for advertising her availability as a notary public in a telephone directory (Complaint No. 72–2004). Additionally, the magistrate was censured by April 5, 2001, order of this Court for using a racial epithet in the courtroom.

Rule 2.14(c) to believe that a judge has engaged or is currently engaging in a serious violation of the Code of Judicial Conduct or has become unable or unwilling to perform official duties, the Court may direct that the judge not hear any further civil or criminal matters or perform other judicial functions while the matter is pending, with or without pay. (3) The provisions set forth in paragraph (d)(1) shall be construed as separate and in addition to the provisions of paragraph (c), above. Further, the provisions of paragraph (d)(1) shall be applicable only where a judge has been convicted of a serious offense or indicted or otherwise charged with a serious offense.

(e) After the hearing on the issue of suspension, the Court may temporarily suspend the judge with or without pay while the matter is pending before the Judicial Hearing Board and until the Court has disposed of the formal charges.

(f) Both the details of the complaint filed by the Administrative Director of the Courts and the investigation conducted by the Office of Disciplinary Counsel under this rule shall be confidential, except that when a formal charge has been filed with the Clerk of the Supreme Court, all documents filed with the Clerk and the Judicial Hearing Board shall be made available to the public.

However, Disciplinary Counsel may release information confirming or denying the existence of a complaint or investigation, explaining the procedural aspects of the complaint or investigation, or defending the right of the judge to a fair hearing. Prior to the release of information confirming or denying the existence of a complaint or investigation, reasonable notice shall be provided to the judge.

CODE OF JUDICIAL CONDUCT

## Canon 1. A judge shall uphold the integrity and independence of the judiciary.

A. An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved.

The provisions of this Code are to be construed and applied to further that objective.

## Canon 2. A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities.

A. A judge shall respect and comply with the law, shall avoid impropriety and the appearance of impropriety in all of the judge's activities, and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge shall not allow family, social, political, or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or knowingly permit others to convey the impression that they are in a special position to influence the judge. A judge shall not testify voluntarily as a character witness.

## Canon 3. A judge shall perform the duties of judicial office impartially and diligently.

A. Judicial duties in general.—The judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law. In the performance of these duties, the following standards apply.

B. Adjudicative responsibilities.—(1) A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.

(2) A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism....

(7) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding....

E. Disqualification.—(1) A judge shall disqualify himself or herself in a proceeding

in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . .

**Canon 4. A judge shall so conduct the judge's extra-judicial activities as to minimize the risk of conflict with judicial obligations.**

A.  Extra-judicial activities in general.—A judge shall conduct all of the judge's extra-judicial activities so that they do not:

(1) cast reasonable doubt on the judge's capacity to act impartially as a judge;

(2) demean the judicial office;  or

(3) interfere with the proper performance of judicial duties.

D.  Financial  activities.—(1)  A judge shall not engage in financial and business dealings that . . .

(b) involve the judge in frequent transactions or continuing business relationships with those lawyers or other persons likely to come before the court on which the judge serves.